OPINION OF THE COURT
GIBBONS, Circuit Judge.
Wheelabrator-Frye, Inc. (Wheelabrator) and Tilghman Wheelabrator Limited (Tilghman) seek appellate review of orders of the district court in a proceeding under 28 U.S.C. § 1334(b) (Supp. Y 1981), which is in effect during the transition period under the Bankruptcy Code. Pub.L. No. 95-598, tit. IV, § 405, 92 Stat. 2686 (printed in note preceding 28 U.S.C. § 1471 (Supp. V 1981)). Wheelabrator seeks review of an order denying it leave to appeal from an order of the bankruptcy court. Tilghman seeks review of an order affirming the order of the bankruptcy court, which denied its motion to dismiss a civil proceeding against it related to a case under Title 11. See 28 U.S.C. § 1471(b) (Supp. Y 1981), which is in effect during the transition period under the Bankruptcy Code. Pub.L. No. 95-598, tit. IV, § 405, 92 Stat. 2686 (printed in note preceding 28 U.S.C. § 1471 (Supp. V 1981)). Tilghman’s motion asserted (1) that the contract on which its liability, if any, is predicated contains a forum selection clause which should be enforced, and (2) that the bankruptcy court is an inconvenient forum. The plaintiff in the section 1471(b) action is the debtor, Coastal Steel ' Corporation (Coastal). It contends that we lack jurisdiction to review either order, but should such jurisdiction exist, both orders should be affirmed. Assuming we have jurisdiction to review either order under any of the statutory provisions defining our reviewing authority, we must also consider whether in light of the decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), there is subject matter jurisdiction over the dispute in any federal court.
I.
On November 9, 1976 Coastal, a steel fabricator with its principal place of business in New Jersey, contracted with Sir James Farmer Norton & Co., Ltd. (Farmer Norton), a British corporation, for an in-line steel working plant in turn-key condition ready for commercial production of cold-drawn steel bar in accordance with contract specifications. The Coastal-Farmer Norton contract contained a provision that any dispute between the parties would be settled by arbitration “where the property in contest is located.” The plant was to be erected in New Jersey.
One component of the plant was a bar cleaning machine or blast unit. The contract did not specify the supplier of the blast unit, but prior to the execution of the agreement Coastal had suggested to Farmer Norton that it investigate such a unit manufactured by a British firm called St. Georges Engineers, Ltd. (St. Georges). In June of 1976 St. Georges submitted to Farmer Norton a quotation on a blast unit. Shortly after St. Georges submitted the quotation, it was acquired by Tilghman, a British corporation and a subsidiary of Wheelabrator-Frye, Inc. On November 26, 1976, several weeks after the execution of the Coastal-Farmer Norton contract, Tilgh-man informed Farmer Norton that St. Georges had seriously miscalculated the cost of the blast unit on which it quoted. Tilgh-man and Farmer Norton then contracted for a Tilghman blast unit at a price of $176,000, which was higher than St. Georges’ original quotation but lower than Tilghman’s revised cost estimate. The Tilghman-Farmer Norton contract provided that the blast unit would be built in England and delivered there to Farmer Norton. It also provided:
*193 15. These conditions shall be construed in accordance with English law. In the event of any dispute arising the same shall be determined by the English Courts of Law.
Although delivery was made to Farmer Norton in England, Tilghman undertook to supervise the commissioning of the blast unit after its installation in Coastal’s New Jersey plant. Tilghman arranged for its American parent company, Wheelabrator of Mishawaku, Indiana, to supervise the commissioning. In late 1979 Tilghman also sent a representative to New Jersey to make modifications on the blast unit.
On April 11,1980, Coastal filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. In July of 1980 the debtor filed in the bankruptcy court a complaint against Farmer Norton, Tilghman, Wheelabrator, and Charterhouse Japhet Export Finance Company (Charterhouse), an English firm which financed Coastal’s purchase from Farmer Norton. Farmer Norton never appeared and has gone bankrupt. Coastal settled with and dismissed its complaint against Charterhouse. Against Tilghman and Wheelabrator its complaint seeks recovery of over $4 million in consequential damages resulting from alleged defects in the Tilghman supplied blast unit.
Tilghman and Wheelabrator appeared and filed answers denying the material allegations of the complaint. They also moved to dismiss. The bankruptcy court denied the motion to dismiss without prejudice to its renewal after further discovery. After fairly extensive discovery, including depositions initiated by Coastal of various witnesses in England, Tilghman again moved to dismiss, relying both on the forum selection clause in the Tilghman-Farmer Norton contract and on the forum non conveniens doctrine. Wheelabrator joined in the motion in a reply brief. The bankruptcy court denied the Tilghman motion by an order dated November 9, 1981.
Both Tilghman and Wheelabrator applied to the district court, pursuant to 28 U.S.C. § 1334(b), for leave to appeal. The court granted such leave on January 27,1982, but only as to Tilghman. On May 27, 1982 the district court granted Coastal’s motion to dismiss Wheelabrator as an appellant and affirmed the order denying Tilghman’s motions, for reasons which we address in Part IV.B infra. Tilghman and Wheelabrator moved the district court to certify, pursuant to 28 U.S.C. § 1292(b) (1976), that its order involved a controlling question of law as to which there is a substantial ground for a difference of opinion and that an immediate appeal might materially advance the ultimate termination of the litigation. The district court denied that motion. Tilgh-man and Wheelabrator have both appealed.
II.
Tilghman and Wheelabrator originally relied for appellate jurisdiction, on 28 U.S.C. § 1291. The parties and this court recognized, however, that the less than clear provisions of Pub.L. No. 95-598, §§ 236-41, 405, 92 Stat. 2667-71, 2685 (1978), respecting appealability of orders in civil proceedings related to cases under Title 11, require this court to consider all possible sources of its authority to review the orders in question. Coastal contends that they are entirely unreviewable, while Tilghman and Wheelabrator urge that Congress could not have intended to foreclose review of orders denying enforcement of forum selection clauses or compelling litigation in inconvenient forums. The Northern Pipeline decision presents a further complication, for it is now clear that the bankruptcy court, the order of which the district court affirmed, does not have jurisdiction over Coastal’s action against Tilghman and Wheelabrator. If the district court has such jurisdiction, as Local Rule 47(C)(3) of the District Court for the District of New Jersey appears to assume, we must consider whether our jurisdiction under 28 U.S.C. §§ 1651,1291 or 1292 applies, or whether 28 U.S.C. § 1293 or 28 U.S.C. § 1471(d) governs. The problem is not a simple one.
A.
If the ease had been before the district court as a section 1332 federal question or a *194 section 1331 diversity case, we would have jurisdiction under section 1292(a)(1). A motion to dismiss an action in order to give effect to a forum selection clause is in practical effect an application for specific performance of that contractual provision. It is analytically indistinguishable from a motion to stay an action at law pending arbitration. Grants or denials of such orders are reviewable under section 1292(a)(1). Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935); Gavlik Construction Co. v. H.F. Campbell Co., 526 F.2d 777 (3d Cir.1975); Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Comm., 387 F.2d 768 (3d Cir.1967). Deferrals to non-ar-bitral tribunals have been treated similarly. In re Unterweser Reederei G.M.B.H., 428 F.2d 888 (5th Cir.1970), aff’d en banc, 446 F.2d 907 (5th Cir.1971), vacated on other grounds sub nom. The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); Alberto-Culver Company v. Scherk, 484 F.2d 611 (7th Cir.1973), rev’d on other grounds, Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). The Bremen and Scherk are the Supreme Court’s definitive modern pronouncements on the enforceability of contractual forum selection clauses. In each case the Supreme Court’s appellate jurisdiction was, under 28 U.S.C. § 1254, derivative of the jurisdiction of the court of appeals, and in each case that jurisdiction was predicated on section 1292(a)(1).
Coastal contends that because some of the relief requested was equitable rather than legal, the Enelow-Ettelson[1] rule does not apply. We note that in The Bremen the underlying suit was in admiralty and that in Scherk both legal and equitable relief was requested. Thus it may well be that for purposes of reviewing interlocutory decisions on enforceability of forum selection clauses pursuant to section 1292(a)(1), the Supreme Court no longer recognizes the artificial Enelow-Ettelson distinction. But see Cotier v. Inter-County Orthopaedic Ass’n, 526 F.2d 537, 540-41 (3d Cir.1975); Rodgers v. United States Steel Corp., 508 F.2d 152,160 (3d Cir.), cert. denied, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). In any event, we have examined the pleadings, and we conclude that whether on a contract or a tort theory, what Coastal seeks is money damages for the alleged malfunctioning of a machine. This is classic legal relief. Thus the appeal falls within the classic Ene-low-Ettelson formulation, assuming section 1292(a)(1) applies to proceedings relating to bankruptcy.
B.
Tilghman and Wheelabrator also urge that the orders are in any event appealable under section 1291 as collaterally final. Appellate jurisdiction, even in a section 1331 or section 1332 case, is on this theory more problematical. Section 1291 permits review of “all final decisions of the district courts,” and Fed.R.Civ.P. 54(b) provides that “any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action ... and ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.” The orders here in question fit literally within Rule 54(b). The Supreme Court has, however, recognized that some orders which fall literally within Rule 54(b) are nevertheless final for purposes of appellate review. The task of the lower federal courts in identifying such orders has not been aided by the Court’s propensity to treat as interchangeable cases arising from state courts under section 1257 and from district courts under section 1291.[2] Its most recent effort, *195 on the federal side, to instruct as to what orders are reviewable under section 1291 despite Rule 54(b) is Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, - U.S. -, 103 S.Ct. 927, 935, 74 L.Ed.2d 765 (1983), which reiterated the test for collateral finality announced in Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978):
To come within the “small class” of decisions excepted from the final judgment rule by Cohen [v. Beneficial Loan Corporation, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)], the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.
For purposes of our analysis we perceive Tilghman and Wheelabrator to be similarly situated, in that the denial of leave to appeal deprived the latter of the opportunity to pursue the two issues — enforceability of the forum selection clause and forum non conveniens — which Tilghman raised in its section 1334(b) appeal. Thus we will address those two issues.
(1)
The forum non conveniens contention does not fit comfortably within the three-part Coopers & Lybrand formulation. The district court’s affirmance established the rejection of the forum non conveniens contention as law of the case, and thus satisfied the first criterion — conclusive determination of the disputed question. A forum non conveniens determination cannot easily be made, however, without reference to the merits of the case. As the Supreme Court observed in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), considerations relevant to a forum non conveniens ruling include:
the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.
These are considerations going to the merits of the case and requiring assessment of the substantive issues in the litigation. Moreover, even when a trial court misjudges a forum non conveniens claim, a reviewing court can, after final judgment, ascertain the degree of prejudice and reverse. See United States v. MacDonald, 435 U.S. 850, 859, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978) (discussing post-trial review of speedy trial claim). Thus we do not believe that the rejection of a forum non conven-iens claim is reviewable as a collaterally final order under section 1291.
(2)
The refusal to enforce the contractual forum selection clause, however, presents a different set of considerations. As with the forum non conveniens motion, the district court’s affirmance has established that rejection as law of the case. Thus the first Coopers & Lybrand factor is satisfied. Moreover, the forum selection clause is far less obviously related to the substantive merits of the underlying dispute than is the forum non conveniens contention. We recognize, of course, that in determining whether or not to enforce such a clause the forum court may, as a matter of forum policy, look to factors similar to those bearing on the grant or denial of a forum non conveniens motion. See Copperweld Steel Co. v. Demag-Mannesmann-Bohler, 578 F.2d 953, 965 n. 18 (3d Cir.1978). Nevertheless a contractual clause selecting either a judicial or an arbitral forum for the resolution of disputes establishes a legal right which is analytically distinct from the rights being asserted in the dispute to which it is addressed. It is a right somewhat analogous to those recognized in Ab- *196 ney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (denial of motion to dismiss on double jeopardy grounds appealable under section 1291), and Helstoski v. Meanor, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (denial of motion to dismiss on speech and debate clause grounds appealable under section 1291).
The more difficult question is whether the third Coopers & Lybrand factor is satisfied. In the Abney and Helstoski cases it was, because those cases involved claims of absolute immunity from participation in the legal proceedings in question, which could never be vindicated after final judgment. See also Forsyth v. Kleindienst, 599 F.2d 1203 (3d Cir.1979), cert. denied, 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981) (claim of absolute official immunity). The right to specific performance of a forum selection clause is not absolute. Under the Supreme Court’s formulation a court having subject matter jurisdiction must weigh competing considerations in deciding on enforceability of such a clause.
If the party asserting the applicability of the forum selection clause prevails on the merits of the underlying dispute, however, an erroneous denial of its specific performance will obviously escape review after final judgment. Moreover, if that party should lose on the merits of the underlying dispute, it is not at all clear that the forum selection clause would be an available ground for a post-final judgment reversal. The trial would ordinarily have been held in a court having jurisdiction, and a federal statute provides:
There shall be no reversal in the Supreme Court or a court of appeals for error in ruling upon matters in abatement which do not involve jurisdiction.
28 U.S.C. § 2105 (1976). This statute originated in section 22 of the Judiciary Act of 1789 as a qualification to the appellate jurisdiction of both the circuit courts and the Supreme Court over “final decrees and judgments in civil actions ... upon a writ of error.... ” 1 Stat. 73, 84. Thus it has never had any application to criminal cases, which under the 1789 Act were not appeala-ble after final judgment,[3] or in appeals from state courts.[4] Moreover, since under the 1789 Act there was no equivalent of section 1292(a) or (b), the qualification should have no application to those subsequently enacted provisions. And since the 1789 Act in section 14,1 Stat. 73, 81, provided separately for the exercise of discretionary review by common-law writs other than writs of error with no similar qualification, section 2105 can have no application to the discretionary interlocutory review provided for in the present equivalent of section 14, 28 U.S.C. § 1651 (1976). Finally, when section 2105 was enacted there was no Cohen doctrine. Thus we think that the section was originally intended to apply only to writs of error after a full trial, and to prevent post-trial consideration of non-jurisdictional pleas in abatement. Consistent with that purpose, it should not be held to be applicable to those collateral matters not going to the merits of the underlying dispute which are appealable to the courts of appeal by virtue of the Cohen doctrine. The only instance in which section 2105 can properly apply is in an appeal from a final judgment after a trial on the merits.
In that context the statute may well apply to an erroneous rejection of a claim that a forum selection clause should have been enforced. Nineteenth century lawyers were obviously better versed in the meaning of pleas in abatement than are we, since Fed.R.Civ.P. 7(e) has abolished them in favor of motions. What is now included, we suppose, are those non-jurisdictional motions which, if granted, would result in the dismissal of an action without prejudice to its reconsideration when refiled in another forum or in another pleading. See Bowles v. Wilke, 175 F.2d 35, 37-38 (7th Cir.), cert. denied, 338 U.S. 861, 70 S.Ct. 104, 94 L.Ed. 528 (1949). A motion for specific enforce *197 ment of a forum selection clause would seem to fit that mold. Such a motion is non-jurisdictional and has no direct bearing on the merits of the underlying dispute.
If, as appears, section 2105 would apply to a forum selection clause motion in a post-trial appeal, a ruling denying a motion would appear to satisfy all three of the criteria for review under the Cohen doctrine announced in Coopers & Lybrand. Thus entirely apart from the Enelow-Ettel-son rule discussed in Part II. A. above, we hold that an order denying a pre-trial motion to enforce a forum selection clause is reviewable as a collaterally final order under section 1291. We hold, moreover, that since section 2105 was intended to protect the interest of the parties and the federal courts in fully completed trials, it does not apply to a Cohen appeal on a collateral order. Thus assuming section 1291 applies to proceedings relating to bankruptcy it would be a basis for jurisdiction to review the order denying the motion to enforce the forum selection clause.
C.
Sections 1291 and 1292(a)(1) afford appeals of right. In addition, 28 U.S.C. § 1651 (1976), vests in the courts of appeals authority to issue writs in aid of their potential appellate jurisdiction. Unlike appeals under sections 1291 and 1292(a)(1), however, the relief available under section 1651 is not a matter of right. It involves the exercise of discretion in the appellate court in determining the appropriateness of interlocutory review of the order in question. There is no time limit for the filing of a petition for the relief available under section 1651, and thus there is no reason why this court may not treat an attempted appeal as such a review. We have on occasion done so. Cheney State College v. Hufstedler, 703 F.2d 732 (3d Cir.1983); Hackett v. General Host Corp., 455 F.2d 618, 626 (3d Cir.), cert. denied, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972). See 9 Moore’s Federal Practice ¶ 110.28, at 316 (1982). Thus we clearly have the power under section 1651 to review both the forum non conveniens ruling and the forum selection clause ruling, assuming section 1651 applies to proceedings relating to bankruptcy. The question is whether, under the discretionary rules which have been developed under that section, that power should be exercised in given instances. 16 C.A. Wright, A.R. Miller, E.H. Cooper & E. Gressman, Federal Practice and Procedure § 3932, at 206 (1977); see generally Berger, The Mandamus Power of the United States Courts of Appeals: A Complex and Confused Means of Appellate Control, 31 Buffalo L.Rev. 37 (1982). No authority has been called to our attention which would preclude the exercise' of discretion in favor of pretrial review of either a forum non conveniens issue or a forum selection clause issue. In a case where the trial court’s error is on either issue egregious and the likely harm from delayed review serious we should exercise such review. Obviously, then, the appropriateness of section 1651 interlocutory review to some extent involves consideration of the merits of the challenged ruling. But we hold that if section 1651 applies to proceedings relating to bankruptcy we have discretionary power under that section to review both challenged rulings.
III.
Coastal contends that the jurisdictional provisions of the Bankruptcy Act of 1978 (Bankruptcy Code) preclude the exercise of this court's reviewing authority over either the forum non conveniens issue or the forum selection clause issue. Those provisions, Coastal contends, preempt sections 1291,1292 and 1651. In its view, the Bankruptcy Code intended to place all pendente lite rulings of a bankruptcy court beyond the reach of the courts of appeals and the Supreme Court. Since the federal appellate courts have had the remedial powers conferred by section 1651 since 1789, and those conferred in section 1292(a)(1) since 1891, Coastal’s proposition is that the Bankruptcy Code placed the bankruptcy courts in a position in which their pendente lite rulings are to be more insulated from appellate review than those of any civil federal court *198 in history. On its face the proposition seems extreme. Yet Coastal’s argument from the text of the statute is plausible.
Original jurisdiction over Coastal’s lawsuit depends on 28 U.S.C. § 1471(b), which authorizes the district courts to exercise jurisdiction over “all civil proceedings arising under title 11 or arising in or related to cases under title 11.” Coastal’s claims depend on state law, and its complaint does not allege complete diversity, but article III of the Constitution permits the exercise of a protective federal jurisdiction as broad as section 1471(b). Schumacher v. Beeler, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433 (1934). However, the rulings in this instance were not made initially by an article III judge, but by a judge appointed under 28 U.S.C. § 153 (Supp. V 1981). In light of Northern Pipeline, that judge can no longer proceed with the trial. That judge also may have lacked power to make the challenged rulings, since they are of a type ordinarily requiring judicial action. For present purposes, however, we will assume arguendo that because the Northern Pipeline mandate was withheld until December 23, 1982, the bankruptcy judge had authority to pass on the Tilghman and Wheelabrator motions.
Bankruptcy appeals are dealt with in two Bankruptcy Code provisions. 28 U.S.C. § 1293 (Supp. V 1981) refers to the courts of appeals:
(a) The courts of appeals shall have jurisdiction of appeals from all final decisions of panels designated under section 160(a) of this title.
(b) Notwithstanding section 1482 of this title, a court of appeals shall have jurisdiction of an appeal from a final judgment, order, or decree of an appellate panel created under section 160 or District Court of the United States, or from a final judgment, order, or decree of a bankruptcy court of the United States if the parties to such appeal agree to a direct appeal to the court of appeals.
Because in this circuit no panels have been designated under section 160(a), and in this case the parties did not consent to a direct appeal to the court of appeals, only the italicized language of section 1293(b) is relevant; “a court of appeals shall have jurisdiction of an appeal from a final judgment, order, or decree of ... a District Court of the United States.... ” That language must be read in conjunction with the section governing appeals from bankruptcy courts to district courts:
(a) The district courts for which panels have not been ordered appointed under section 160 of this title shall have jurisdiction of appeals from all final judgments, orders, and decrees of bankruptcy courts.
(b) The district courts for such districts shall have jurisdiction of appeals from interlocutory orders and decrees of bankruptcy courts, but only by leave taken of the district court to which the appeal is taken.
28 U.S.C. § 1334 (Supp. V 1981).[5] Coastal’s position as to the meaning of these provisions is straightforward. According to Coastal, section 1293(b) is exclusive and preemptive. It permits review of district court appellate decisions made under section 1334(a), but not district court decisions under section 1334(b). The former include only judgments which would be final under section 1291. The latter include all matters formerly reviewable under section 1292(a)(1), section 1292(b) and section 1651. All such matters, Coastal urges, are now the province of the district court, and neither the courts of appeals nor the Supreme Court may review them until after final judgment, if then.
Although section 1293(b) has been considered by us twice before, in neither case did we have occasion to address the Coastal contention.[6] Both involved matters which *199 were before the district court under section 1334(a). See Matter of Marin Motor Oil, Inc., 689 F.2d 445, 447 (3d Cir.1982), cert. denied, - U.S. -, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983); Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 100-01 (3d Cir.1981). Thus the availability of interlocutory appellate review of orders in proceedings relating to bankruptcy is a question of first impression in this court. It is, moreover, a question of enormous significance, involving the power of this court and of the Supreme Court to review such important matters as preliminary injunctions issued in the vast range of cases entertainable under section 1471(b). If Coastal is right, the bankruptcy courts have been given pendente lite powers, subject only to district court review, equivalent to those exercised by the federal circuit courts prior to the passage of the Evarts Act in 1891.
Prospectively, Coastal’s position, at least in cases such as this which are proceedings relating to bankruptcy, must be rejected. Northern Pipeline holds that bankruptcy courts may not entertain such related proceedings. In reaction to that holding the Judicial Conference of the United States urged adoption of local rules for the processing of bankruptcy and bankruptcy related cases. The District of New Jersey has done so. Its rule provides that
[ojrders and judgments of bankruptcy judges in civil proceedings related to cases arising under Title 11, but not arising in or under Title 11, or wherever otherwise constitutionally required, judgments as defined in Rule 54(a) of the Federal Rules of Civil Procedure, which would be appealable if rendered by a district judge and which do not result from a stipulation among the parties, shall not be effective and shall not be entered until the judgment has been signed by a district judge.
Local Rule 47(C)(3). Since the purpose of this provision is to meet the constitutional deficiencies recognized in Northern Pipeline, it is plain that orders entered in related proceedings must be considered orders of the district courts, not of the bankruptcy courts. They will not fall within section 1334, and thus will not be governed by section 1293. As orders of the district court they will be governed by sections 1291,1292 and 1651. Indeed in this case all future orders must, under Local Rule 47(C)(3), be entered by the district court.
The question thus presented is whether, in related proceedings in which orders have been entered prior to December 23, 1982, we should hold that section 1293 applies rather than sections 1291, 1292 and 1651. From a purely mechanical viewpoint sections 1334 and 1293 were technically applicable during that period because the Supreme Court in Northern Pipeline made its holding effective on December 23, 1982. The policies which it identified for a nonret-roactivity holding in Northern Pipeline have no application, however, to the instant appeal. In Northern Pipeline the Court observed “that retroactive application would not further the operation of our holding, and would surely visit substantial injustice and hardship upon those litigants who relied upon the Act’s vesting of jurisdiction in the bankruptcy courts.” 102 S.Ct. at 2880. There is no hardship in a retroactive application of the Northern Pipeline holding in this instance, because the case has not yet been tried, and when it is, it must be tried in the district court, not the bankruptcy court. Indeed the same motions could now be renewed, and under Local Rule 47(C)(3) orders disposing of them would have to be entered in the district court. It seems to us the height of artificiality to apply today the nonretroac-tivity holding of Northern Pipeline so as to place under section 1293 orders which tomorrow will fall within sections 1291, 1292 and 1651.
We hold, therefore, that orders entered in proceedings related to bankruptcy, which were made by the district court pursuant to section 1334, should be deemed orders of the district court and governed by *200 sections 1291, 1292 and 1651. That holding makes it unnecessary in this case to consider whether Congress intended in sections 1293 and 1334 to insulate pendente lite orders of the bankruptcy court from all supervision by the courts of appeals. The question will arise, of course, with respect to cases arising under title 11 as distinguished from cases in or related to such cases. For the present it suffices to note that even with respect to cases arising under title 11 the construction of sections 1334(b) and 1293(b) advanced by Coastal may not have been intended by Congress.[7] We are particularly doubtful that Congress intended in sections 1293 and 1334(b) to limit the powers of the courts of appeals or the Supreme Court under section 1651.
Our holding that orders entered in proceedings relating to bankruptcy are district court orders reviewable pursuant to sections 1291, 1292 and 1651 is necessarily predicated on the tacit assumption that despite Northern Pipeline the grant of district court subject matter jurisdiction in section 1471(b) survives. We find nothing in the Northern Pipeline opinions suggesting otherwise. Indeed the Northern Pipeline holding that article III judges must exercise the related proceedings jurisdiction rests on the assumption that the jurisdictional grant is operative. Thus Local Rule 47(C)(3) which provides for the continued exercise of section 1471(b) jurisdiction by the district courts is consistent with the Bankruptcy Code and the Northern Pipeline decision.
Coastal also urges that appellate review is precluded by 28 U.S.C. § 1471(d) (Supp. V 1981), which provides:
*201 Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.
We have held that section 1471(b) jurisdiction still lies in the district court. Obviously then, section 1471(d) still qualifies that jurisdiction. We hold, however, that neither a forum selection clause ruling nor a forum non conveniens ruling is an abstention decision. The House Report on the Bankruptcy Code states that “[t]he subsection recognizes the exigencies that arise in such cases as Thompson v. Magnolia Petroleum, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940), in which it is more appropriate to have a State court hear a particular matter of State law.” H.R.Rep. No. 595, 95th Cong., 1st Sess. 446 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 6401. There is no indication in the legislative history of the Bankruptcy Code that Congress regarded issues like the enforceability of a contractual forum selection clause to be abstention issues. A decision on enforceability of such a clause involves a substantive contractual right. A forum non conveniens ruling also involves a substantive right, in the sense that it relates directly to the ability of the parties to prepare and present their respective cases. Tilghman and Wheelabrator are not asking the court to refrain from entertaining the action and to relegate Coastal to a New Jersey court. Their position is that any New Jersey forum, state or federal, must as a matter of law dismiss because they are legally entitled to have the dispute resolved in England. Section 1471(d) does not bar appellate review of the rejection of that position.
Since we clearly have jurisdiction under section 1292(a)(1) to review the order denying the Tilghman-Wheelabrator motion to enforce the forum selection clause, since that order is also reviewable as a collaterally final order under section 1291, and since we can under section 1651 consider the propriety of the denial of a motion to dismiss on forum non conveniens grounds, Coastal’s motion to dismiss the appeal will be denied.
IV.
Our ruling on Coastal’s jurisdictional motion requires consideration of the merits.
A. The Forum Selection Clause
An initial concern is the governing law for determination of enforceability of the forum selection clause. The fact that the case is in the district court because of the grant of protective federal jurisdiction in section 1471(b) does not alter the legal rules which created the original relationship between Coastal and the parties with which it dealt. The federal question jurisdiction provided in article III, section 2 of the Constitution authorizes Congress to provide a federal forum for the convenient enforcement of rights of debtors dependent upon legal relationships arising out of non-federal law. Schumacher v. Beeler, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433 (1934). But Congress did not in section 1471(b), and perhaps could not constitutionally, federalize those legal relationships. See Hill, The Erie Doctrine in Bankruptcy, 66 Harv.L.Rev. 1013 (1953).
The Supreme Court in The Bremen and in Scherk appears to have assumed without saying so that in a federal forum the enforceability of a forum selection clause is determined by a generally applicable federal law. This court in Copperweld Steel Co. v. Demag-Mannesmann-Bohler, 578 F.2d 953, 965-66 (3d Cir.1978), appears to have made the same unarticulated assumption. It is not entirely clear why, absent a statute such as the Federal Arbitration Act, the enforceability of a contractual forum selection clause should properly be divorced from the law which in other respects governs the contract. See Leasewell, Ltd. v. Jake Shelton Ford, Inc., 423 F.Supp. 1011, 1014 (S.D.W.Va.1976); Davis v. Pro Basketball, Inc., 381 F.Supp. 1, 3 (S.D.N.Y.1974) (state law determines enforceability). Compare, e.g., Taylor v. Titan Midwest Construction Corp., 474 F.Supp. 145, 147 (N.D. *202 Tex.1979); St. Paul Fire and Marine Insurance Co. v. Travelers Indemnity Co., 401 F.Supp. 927, 929 (D.Mass.1975) (federal law determines enforceability). We noted the choice of law problem in Central Contracting Co. v. Maryland Casualty Co., 367 F.2d 341, 344—45 (3d Cir.1966), and the absence of a discussion of it in Copperweld Steel suggests that in this circuit it remains unresolved. It need not be resolved in this case either, for each jurisdiction whose law is arguably relevant takes substantially the same position with respect to enforceability of contractual forum selection provisions. See The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10-11, 92 S.Ct. 1907, 1913-1914, 32 L.Ed.2d 513 (1972) (federal admiralty law); id. at 11 & n. 12, 92 S.Ct. 1914 & n. 12 (English law); Air Economy Corp. v. Aero-Flow Dynamics, Inc., 122 N.J. Super. 456, 457, 300 A.2d 856, 857 (App.Div. 1973) (citing Central Contracting Co. v. Maryland Casualty Co., which was cited with approval in The Bremen) (New Jersey law).
The Bremen announces a general rule which would be applied in each of the arguably interested jurisdictions. That rule is that a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. Coastal does not contend that the clause in the Tilghman-Farmer Norton contract was the result of fraud or overreaching, and neither the district court nor the bankruptcy court relied on this factor. Thus we turn to their treatment of the other two.
(1) Policy of the Forum
The bankruptcy court, but not the district court, found in the Bankruptcy Code’s provision for related proceedings jurisdiction a codification of a policy disfavoring forum selection clauses. Coastal Appendix, Exhibit I, at 11-13. We agree that Congress, in enacting a broad protective federal jurisdiction provision, adopted a policy of facilitating the collection and distribution of debtor estates. We do not agree, however, that section 1471(b) was meant to change the contractual rights of the parties. A bankruptcy trustee may assume or reject an executory contract. 11 U.S.C. § 365(a); In re Bildisco, 682 F.2d 72 (3d Cir.1982), cert. granted sub nom. NLRB v. Bildisco and Bildisco, - U.S. -, 103 S.Ct. 784, 74 L.Ed.2d 992 (1983) (Nos. 82-818, 82-852). But, when relying on a contract in proceedings brought under section 1471(b), a trustee or debtor takes the contract as the parties made it. Nothing in the legislative history of the Bankruptcy Code has been called to our attention suggesting that Congress intended to make a change in the public policy favoring forum selection clauses which is manifested in the Federal Arbitration Act, 9 U.S.C. §§ 1-14 (1976), or in the common law announced in The Bremen and similar state and federal cases. Section 1471(b) does not announce a contrary public policy. At best the grant of protective federal jurisdiction over proceedings related to title 11 is one circumstance to be taken into account in making the unreasonableness determination.
(2) Unreasonableness Under the Circumstances
The first circumstance relied on by the district court in support of the conclusion that enforcement of the forum selection clause is Coastal’s claimed status as a third-party beneficiary with the Tilghman-Farmer Norton contract. The court reasoned that in The Bremen the clause was enforced in order to leave the parties to their bargain, whereas Coastal was not a participant in the Tilghman-Farmer Norton bargain. Coastal Appendix, Exhibit J, at 9-10. The Bremen Court did refer to the policy of noninterference with a freely negotiated contract. 407 U.S. at 12,14,16,17, 92 S.Ct. at 1914, 1915, 1916, 1917. The primary rationale of that Court, however, and of others which have enforced forum selection *203 clauses, is that those clauses promote stable and dependable trade relations. Id. at 8-9, 13-14, 92 S.Ct. at 1912-1913, 1914-1915. Introducing into the common law of enforceability of forum selection clauses a third-party beneficiary exception would be inconsistent with that rationale. It would, moreover, be inconsistent with the law of contracts, which has long recognized that third-party beneficiary status does not permit the avoidance of contractual provisions otherwise enforceable. See, e.g., Trans-Bay Engineers and Builders, Inc. v. Hills, 551 F.2d 370, 378 (D.C.Cir.1976); Process and Storage Vessels, Inc. v. Tank Service, Inc., 541 F.Supp. 725, 733 (D.Del.1982). Coastal chose to do business with Farmer Norton, an English firm, knowing that Farmer Norton would be acquiring components from other English manufacturers. Thus it was perfectly foreseeable that Coastal would be a third-party beneficiary of an English contract, and that such a contract would provide for litigation in an English court. Reliance on Coastal’s third-party beneficiary status as a reason for disregarding such a clause was an error of law.
The second circumstance relied on by the district court for denying enforcement is that Coastal has asserted tort claims as well as contract claims, and that the forum selection clause is inapplicable to the former. The difficulty with this reasoning is that it ignores the reality that the Tilghman-Farmer Norton contract is the basic source of any duty to Coastal. There is no evidence suggesting that the clause was not intended to apply to all claims growing out of the contractual relationship. If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims such as negligent design, breach of implied warranty, or misrepresentation. Coastal’s claims ultimately depend on the existence of a contractual relationship between Tilghman and Farmer Norton, and those parties bargained for an English forum. We agree with those courts which have held that where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain. See Bense v. Interstate Battery System of America, Inc., 683 F.2d 718 (2d Cir.1982) (franchise agreement with forum selection clause and antitrust claim); Gordonsville Industries, Inc. v. American Artos Corp., 549 F.Supp. 200 (W.D.Va.1982) (contract for industrial installation with forum selection clause and state law design defect, negligence, and warranty claims); Hoes of America, Inc. v. Hoes, 493 F.Supp. 1205 (C.D.Ill.1979) (distributorship agreement with forum selection clause and state law business tort claim). Reliance on the new contract claims as a reason for disregarding the forum selection clause was on this record improper.
A third circumstance relied on by the district court for denying enforcement is the presence in the case of Wheelabrator, an American corporation. But while it would be inconvenient for Coastal to have to proceed in two separate forums against the separate defendants, in this instance Coastal does not face that problem. Wheel-abrator has agreed to submit to the jurisdiction of an English court. Moreover Wheelabrator’s only significant status in the case is as Tilghman’s parent. The pleadings suggest that Wheelabrator did some work on the blast unit on Tilghman’s behalf, but they do not suggest that this work, separately, caused Coastal’s losses. Thus reliance on Wheelabrator’s presence in the case as a ground for requiring that Tilghman litigate in New Jersey was on this record improper.
The district court also alluded to the large amount of potential evidence in this country. Neither court found expressly that an inspection of the plant would be required, however, and the depositions on file show that Coastal has examined in England a number of English witnesses. Under The Bremen formulation the party objecting to enforcement of a forum selection clause has the burden of establishing the unreasonableness of such enforcement. In this case Coastal’s showing is in our view legally insufficient. The availability of wit *204 nesses is a problem in either jurisdiction, but an insurmountable problem in neither. That factor appears to us essentially in equipoise. The only additional factor Coastal alludes to is the supposed difficulty of obtaining counsel in England. Tilghman has the same problem here.
Finally the district court referred to the fact that under a plan of reorganization, now confirmed, Coastal’s creditors have an interest in any sums which may be recovered from Tilghman. This factor has a Robin Hood quality, and reliance on it would be plainly improper.
(3) Other Contentions
We conclude, therefore, that none of the reasons relied on by either the bankruptcy court or the district court for denying the motion for enforcement of the forum selection clause is legally sufficient. Coastal advances two others. The first is that Wheelabrator filed a proof of claim in the bankruptcy proceeding, and in so doing, waived any objection it or Tilghman might have to the exercise of jurisdiction under section 1471(b) in New Jersey. We know of no authority supporting the proposition that the filing of a proof of claim is a waiver of the provisions of a forum selection clause. The second is that by virtue of the provisions of the confirmed Plan of Reorganization, which retained jurisdiction over the Tilghman-Wheelabrator case, the defendants are barred by res judicata from objecting to trial in the bankruptcy court. The confirmed Plan plainly did not adjudicate anything respecting the instant dispute. Thus, both contentions are entirely without merit. The Tilghman-Wheelabrator motions to dismiss the complaint so as to enforce the forum selection clause should in this case have been granted.
V.
Because we hold that the forum selection clause should have been enforced, the forum non conveniens ruling need not be addressed in detail. It suffices to note that since there are inconveniences associated with the trial of the underlying dispute in either forum, we probably could not hold that the bankruptcy court committed an abuse of discretion in denying the motion to dismiss on that ground.
VI.
Coastal’s motion to dismiss the appeal will be denied. The order affirming the bankruptcy court’s denial of the Tilghman-Wheelabrator motion will be reversed, and the case remanded to the district court for the entry of an order, pursuant to Local Rule 47(C)(3), dismissing Coastal’s complaint on appropriate conditions with respect to Wheelabrator’s appearance in an English court, and with respect to waiver of any statute of limitations problem. See MacLeod v. MacLeod, 383 A.2d 39 (Me.1978) (forum non conveniens dismissal conditioned on consent to have action in another court deemed commenced on date of original action).

. Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935) (a stay of a legal action on a contract to hear and determine an equitable fraud defense); Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942) (same).

. See, e.g., Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 478-82, 95 S.Ct. 1029, 1037-1039, 43 L.Ed.2d 328 (1975); North Dakota State Board of Pharmacy v. Snyder’s Drug Stores, Inc., 414 U.S. 156, 159-62, 94 S.Ct. 407, 410-411, 38 L.Ed.2d 379 (1973); Local 438, Con *195 struction & General Laborers’ Union v. Curry, 371 U.S. 542, 549, 83 S.Ct. 531. 536, 9 L.Ed.2d 514 (1963).

. Roche v. Evaporated Milk Ass’n, 319 U.S. 21, 27 n. 3, 63 S.Ct. 938, 942 n. 3, 87 L.Ed. 1185 (1943).

. Buck Stove and Range Co. v. Vickers, 226 U.S. 205, 213, 33 S.Ct. 41, 42, 57 L.Ed. 189 (1912).

. The provisions governing appeals to panels designated pursuant to section 160(a) are essentially identical. 28 U.S.C. § 1482 (Supp. V 1981).

. In re Bildisco, 682 F.2d 72 (3d Cir.1982), cert. granted sub nom. NLRB v. Bildisco and Bildisco, - U.S. -, 103 S.Ct. 784, 74 L.Ed.2d 992 (1983), does not discuss appellate jurisdiction, but appears to have involved an appeal from *199 a matter which was before the district court under section 1334(a).

. The evolution of section 1293 is complex. The original bankruptcy code bill, H.R. 8200, which passed the House on February 1, 1981, 124 Cong.Rec. H. 478 (daily ed. Feb. 1, 1978), made bankruptcy courts article III courts and provided for appeals to the courts of appeals under sections 1291 and 1292. H.R. 8200, 95th Cong., 1st Sess. §§ 237, 238 (1977). Under the original version of the Senate bill, S. 2266, appeals were routed through the district courts, and no reference was made to the jurisdiction of the courts of appeals. The Report of the Senate Judiciary Committee on S. 2266 observed that section 1291 governed such appeals. S.Rep. No. 989, 95th Cong., 2d Sess. 18 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The Senate approved S. 2266 on September 7, 1978. 124 Cong.Rec. S14745 (daily ed. Sept. 7, 1978). As enacted the Bankruptcy Code resulted from a compromise between the Senate and House floor managers of the legislation, and it is in this bill that what is now section 1293 first appears as section 236(a). In its original version, section 236 merely addressed court of appeals jurisdiction over orders of the bankruptcy courts and panels. The only discussion of the section is as follows:
An appeal from a decision of a bankruptcy court will be taken to the district court of the district within which the bankruptcy court is located, unless the circuit council of the circuit in which the bankruptcy court is located orders appeals to be taken to a panel of bankruptcy judges comprised of three bankruptcy judges, or both parties by agreement agree to proceed directly to the circuit court of appeals of the circuit in which the bankruptcy court is located. The subject of appeals is dealt with in sections 201, 236, 237, 238, 240, and 241 of title II of the House amendments which in turn create provisions in sections 136, 1293, 1294, 1334, 1408, and 1482 of title 28 implementing the previously described system of appeals.
124 Cong.Rec. HI 1107 (daily ed. Sept. 28, 1978). The additional reference to review of district court orders was made on the Senate floor without explanation or discussion. 124 Cong.Rec. HI 1865-67 (daily ed. Oct. 6, 1978). Thus for all practical purposes there is no legislative history for the section.
One commentator, describing the appeal provisions of the Bankruptcy Code as “nearly incomprehensible,” suggests three alternative readings of section 1293. 16 C.A. Wright, A.R. Miller, E.H. Cooper & E. Gressman, Federal Practice and Procedure § 3926, at 38-43 (Supp. 1983). Another commentator suggests that in the absence of a specific reference courts should not attribute to Congress an intention to supercede section 1292 in bankruptcy cases. Kennedy, The Bankruptcy Court Under the New Bankruptcy Law, 11 St. Mary’s L.J. 251, 292-93 (1979). Nowhere in the Congressional Record or in the bills which either house of Congress considered is there any reference to section 1651.
Given the enormity of the change in law which would bar all court of appeals and Supreme Court review of interlocutory orders in bankruptcy cases, and the complete absence of discussion of such a change, we are not ready to assume without critical analysis that those courts which have held such review to be barred are correct. See In re Regency Woods Apartments, Ltd., 686 F.2d 899, 901 (11th Cir. 1982); In re Riddervold, 647 F.2d 342, 343 (2d Cir.1981); In re Continental Investment Corp., 637 F.2d 1, 3 (1st Cir.1980).