# HELSTOSKI *v.* MEANOR, UNITED STATES DISTRICT JUDGE, ET AL.

No. 78–546. Argued March 27, 1979—Decided June 18, 1979

BURGER, C. J., delivered the opinion of the Court, in which STEWART, WHITE, MARSHALL, BLACKMUN, REHNQUIST, and STEVENS, JJ., joined. BRENNAN, J., filed a dissenting opinion, *post*, p. 508. POWELL, J., took no part in the consideration or decision of the case.

*Morton Stavis* argued the cause for petitioner. With him on the briefs was *Louise Halper*.

*Solicitor General McCree* argued the cause for respondents. With him on the brief were *Assistant Attorney General Heymann, Deputy Solicitor General Frey*, and *Louis M. Fischer*.

*Stanley M. Brand* argued the cause for Thomas P. O'Neill, Jr., Speaker of the United States House of Representatives, et al. as *amici curiae*. With Mr. Brand on the brief was *Neal P. Rutledge*.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

The question in this case is whether mandamus is an appropriate means of challenging the validity of an indictment of a Member of Congress on the ground that it violates the Speech or Debate Clause of the Constitution.[1] The Court of Appeals declined to issue the writ. We affirm.

---

[1] The Speech or Debate Clause provides that "for any Speech or Debate in either House, they [the Senators and Representatives] shall not be questioned in any other Place." Art. I, § 6.

This case was argued together with No. 78–349, *United States* v. *Helstoski, ante*, p. 477, which concerns the restrictions the Speech or Debate Clause places on the admissibility of evidence at a trial on charges that a former Member of the House accepted money in return for promising to introduce and introducing private bills.

## I

Petitioner Helstoski served in the United States Congress from 1965 through 1976 as a Representative from New Jersey. In 1974, the Department of Justice began investigating reported political corruption, including allegations that aliens had paid money for the introduction and processing of private bills which would suspend the application of the immigration laws so as to allow them to remain in this country.

In June 1976, a grand jury returned a 12-count indictment charging Helstoski and others with various criminal acts. Only the first four counts are involved in this case. The first count charged that Helstoski and others had conspired to violate 18 U. S. C. § 201 (c)(1) by accepting money in return for Helstoski's "being influenced in the performance of official acts, to wit: the introduction of private bills in the United States House of Representatives." The charge recited 16 overt acts, 4 of which referred to the actual introduction of private bills; a 5th referred to an agreement to introduce a private bill. The entire conspiracy was charged as a violation of the general conspiracy statute, 18 U. S. C. § 371.

Counts II, III, and IV were substantive counts charging violations of 18 U. S. C. §§ 201 (c)(1) and (2):

> "Whoever, being a public official[,] directly or indirectly, corruptly *asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive* anything of value for himself or for any other person or entity, in return for:
>
> "(1) being influenced in his performance of any official act; or
>
> "(2) being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud on the United States;
>
> . . . . .
>
> "Shall be fined . . . or imprisoned." (Emphasis added.)

"Public official" and "official act" are defined in 18 U. S. C. § 201:

"(a) For the purpose of this section:

" 'public official' means Member of Congress . . . ; and

. . . . .

" 'official act' means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in his official capacity, or in his place of trust or profit."

Each count charged that Helstoski, acting through his legislative aide, had solicited money from aliens in return for "being influenced in the performance of official acts, to wit: the introduction of private bills in the United States House of Representatives on behalf of" the aliens. Essentially, the charges against Helstoski parallel those dealt with in *United States* v. *Johnson*, 383 U. S. 169 (1966), and *United States* v. *Brewster*, 408 U. S. 501 (1972).

Each count also charged that Helstoski, again acting through his aide, had accepted a bribe "in return for his being influenced in the performance of official acts, to wit: the introduction of private bills in the United States House of Representatives on behalf of" the aliens. Finally, each count charged that a private bill had been introduced on a particular date.

Helstoski neither appeared before nor submitted material to the particular grand jury that returned the indictment. The prosecutor provided that grand jury with transcripts of most, but not all, of the testimony of witnesses, including Helstoski, before eight other grand juries.[2] The United States Attorney explained that to avoid any possible prejudice to Helstoski he had not told the ninth grand jury of Helstoski's invocation of his privilege under the Fifth Amendment. Moreover, he

---

[2] The proceedings before the various grand juries are described in *United States* v. *Helstoski, ante,* p. 477.

sought to avoid any challenge resulting from the fact that the District Judge had appeared before one grand jury to rule on Helstoski's claim of that privilege.

Helstoski moved to dismiss the indictment, contending that the grand jury process had been abused and that the indictment violated the Speech or Debate Clause. He supported his allegation of abuse of the grand jury by characterizing the eight grand juries as "discovery tools." The effect, he contended, was to permit the prosecutor to select the information presented to the indicting grand jury and to deprive that grand jury of evidence of the demeanor of witnesses, especially that of Helstoski himself.

District Judge Meanor denied the motion after examining a transcript of the evidence presented to the indicting grand jury. He held that there had been no such abuse to justify invalidating the indictment. He found that most of the material not submitted to the indicting grand jury "was either prejudicial to the defendants, or neither inculpating nor exculpating in nature." He also found that the testimony of two grand jury witnesses should have been presented to the indicting grand jury and concluded that *Brady* v. *Maryland,* 373 U. S. 83 (1963), required that the Government provide Helstoski with transcripts of their testimony. Judge Meanor also held that the Speech or Debate Clause did not require dismissal.

Approximately three months later, in June 1977, Helstoski petitioned the Court of Appeals for a writ of mandamus directing the District Court to dismiss the indictment.

The Court of Appeals declined to issue the writ of mandamus. 576 F. 2d 511 (CA3 1978). It concluded that the indictment in this case was indistinguishable from that in *United States* v. *Brewster, supra,* where an indictment was held not to violate the Speech or Debate Clause even though it contained references to legislative acts. The Court of Appeals rejected Helstoski's argument that the indictment was invalid because the grand jury had heard evidence of legisla-

tive acts, which he argued was in violation of the Speech or Debate Clause. The court declined to go behind the indictment, holding that it was valid on its face.

In seeking reversal here of the Court of Appeals holding, Helstoski argues that the extraordinary remedy of mandamus is appropriate in this case to protect the constitutional command of separation of powers. He contends that the Speech or Debate Clause assigns exclusive jurisdiction over all legislative acts to Congress. The indictment itself, he urges, is a violation of that Clause because it represents an impermissible assertion of jurisdiction over the legislative function by the grand jury and the federal courts. He challenges the validity of the indictment on two grounds. First, the indictment itself refers to legislative acts. Any attempt at restricting the proof at trial, as approved by the Court of Appeals, will amount to an amendment of the indictment, thereby violating a Fifth Amendment right to be tried only on an indictment in precisely the form issued by a grand jury. Second, he contends the Speech or Debate Clause was violated when the grand jury was allowed to consider evidence of his legislative acts notwithstanding that such evidence and testimony was presented by him.

## II

Almost 100 years ago, this Court explained: "The general principle which governs proceedings by *mandamus* is, that whatever can be done without the employment of that extraordinary writ, *may not be done with it.* It lies only when there is practically *no other remedy.*" *Ex parte Rowland,* 104 U. S. 604, 617 (1882) (emphasis added). More recently we summarized certain considerations for determining whether the writ should issue:

> "Among these are that the party seeking issuance of the writ have no other adequate means to attain the relief he desires, and that he satisfy 'the burden of showing that [his] right to issuance of the writ is "clear and indisputa-

ble." ' Moreover, it is important to remember that issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed." *Kerr* v. *United States District Court,* 426 U. S. 394, 403 (1976) (citations omitted).

Helstoski contends that his petition for a writ of mandamus should not be governed by the rules which we have developed for assessing mandamus petitions generally. He argues that the writ is especially appropriate for enforcing the commands of the Speech or Debate Clause. We agree that the guarantees of that Clause are vitally important to our system of government and therefore are entitled to be treated by the courts with the sensitivity that such important values require. We are unwilling, however, to accept the contention that mandamus is the appropriate vehicle for assuring protection of the Clause in the circumstances shown here. Helstoski could readily have secured review of the ruling complained of and all objectives now sought, by direct appeal to the Court of Appeals from the District Court order denying his motion to dismiss the indictment.

Only recently in *Abney* v. *United States,* 431 U. S. 651 (1977), we held that "pretrial orders rejecting claims of former jeopardy . . . constitute 'final decisions' and thus satisfy the jurisdictional prerequisites of [28 U. S. C.] § 1291." *Id.,* at 662. The reasoning undergirding that holding applies with particular force here. The language of the *Abney* opinion is particularly apt, even though the context was the Double Jeopardy Clause:

> "[T]here can be no doubt that such orders constitute a complete, formal and, in the trial court, final rejection of a criminal defendant's double jeopardy claim. There are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred by the Fifth Amendment's guarantee." *Id.,* at 659.

This is equally true for a claim that an indictment violates the fundamental guarantees of the Speech or Debate Clause. Once a motion to dismiss is denied, there is nothing the Member can do under that Clause in the trial court to prevent the trial; but it is equally clear an appeal of the District Court ruling was available.

Second, we noted:

> "[T]he very nature of a double jeopardy claim is such that it is collateral to, and separable from, the principal issue at the accused's impending criminal trial, *i. e.,* whether or not the accused is guilty of the offense charged. In arguing that the Double Jeopardy Clause of the Fifth Amendment bars his prosecution, the defendant makes no challenge whatsoever to the merits of the charge against him. Nor does he seek suppression of evidence which the Government plans to use in obtaining a conviction. Rather, he is contesting *the very authority of the Government to hale him into court to face trial on the charge against him."* [3] *Ibid.* (Emphasis added; citations omitted.)

*Abney* concludes:

> "[T]he rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. . . . [T]his Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to *trial* for the same offense." *Id.,* at 660–661.

That characterization of the purpose of the Double Jeopardy

---

[3] It is true that Helstoski challenges the admissibility of evidence at his trial; that challenge, however, is raised only if the indictment is allowed to stand.

Clause echoed this Court's statement in *Dombrowski* v. *Eastland,* 387 U. S. 82, 85 (1967), that the Speech or Debate Clause was designed to protect Congressmen "not only from the consequences of litigation's results but also from the burden of defending themselves."

Here, the holding of *Abney* becomes highly relevant; by analogy, if a Member "is to avoid *exposure* to [being questioned for acts done in either House] and thereby enjoy the full protection of the Clause, his . . . challenge to the indictment must be reviewable before . . . exposure [to trial] occurs." *Abney, supra,* at 662.

Helstoski argues that he should not be penalized for failing to predict our decision in *Abney.* But he cannot be viewed as being penalized since the controlling law of the Third Circuit was announced at the time of the District Court order denying dismissal of the indictment, and our holding did no more than affirm the correctness of the law of that Circuit. See *United States* v. *DiSilvio,* 520 F. 2d 247, 248 n. 2a (CA3), cert. denied, 423 U. S. 1015 (1975). The relevance of the *Abney-DiSilvio* holdings, read in light of *Dombrowski* v. *Eastland, supra,* was predictable. We hold that if Helstoski wished to challenge the District Court's denial of his motion to dismiss the indictment, direct appeal to the Court of Appeals was the proper course under *DiSilvio, supra.*[4]

*Affirmed.*

MR. JUSTICE POWELL took no part in the consideration or decision of this case.

MR. JUSTICE BRENNAN, dissenting.

In today's decision, the Court professes to "agree that the guarantees of [the Speech or Debate] Clause are vitally important to our system of government and therefore are en-

---

[4] If the petition for a writ of mandamus were treated as an appeal it would, of course, have been jurisdictionally out of time. Fed. Rule App. Proc. 4.

titled to be treated by the courts with the sensitivity that such important values require." *Ante,* at 506. Nonetheless, it refuses to hold mandamus an appropriate vehicle for assuring the protections of the Clause because "Helstoski could readily have secured review of the ruling complained of and all objectives now sought, by direct appeal to the Court of Appeals from the District Court order denying his motion to dismiss the indictment." *Ibid.*

Mr. Helstoski may well be excused if he views the Court's holding as if it were a line out of Joseph Heller's "Catch-22." He cannot utilize mandamus because he should have sought a direct appeal. But he cannot seek a direct appeal, because that avenue is time barred. *Ante,* at 508 n. 4. Of course, the dilemma could have been short-circuited had Helstoski brought an immediate appeal at the time his motion for dismissal of the indictment was denied. Unfortunately, he could not have known that avenue of relief was available until today—for we have never before held that the denial of a claim that an indictment violates the Speech or Debate Clause is an exception to the longstanding rule forbidding interlocutory appeals.* And, as the Court holds, today it is too late. Values as "vitally important" as those guaranteed by the Speech or Debate Clause are entitled to more sensitive treatment.

---

*The Court makes the surprising assertion that Helstoski should have anticipated today's holding on the basis of a footnote in a 1975 Third Circuit opinion dealing with a different issue. (That opinion, like this Court's decision in *Abney* v. *United States,* 431 U. S. 651 (1977), was limited to the double jeopardy issue. *Abney* was announced far too late to have helped the defendant.) Although I agree with the Court's extension of the *Abney* principle from double jeopardy claims to those based upon the Speech or Debate Clause, I do not regard the extension as obvious. Nor, apparently, does the Government, as it carefully refrains from endorsing that view. See Brief for United States 92. I certainly would not use it as a basis for penalizing a former Congressman in his assertion of a principle so "vitally important to our system of government." *Ante,* at 506.