**Michael E. SPIESS, et al.,**
**Plaintiffs-Appellees,**

v.

**C. ITOH & CO. (AMERICA), INC.,**
**Defendant-Appellant.**

**No. 83–2646**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 10, 1984.

Rehearing and Rehearing En Banc
Denied March 8, 1984.

Neil Martin, Houston, Tex., for defendant-appellant.

Edward John O'Neill, Jr., Houston, Tex., for plaintiffs-appellees.

Before TATE, GARWOOD and HIGGIN-BOTHAM, Circuit Judges.

PER CURIAM:

Although all parties take the position that we have jurisdiction of this appeal, we notice *sua sponte,* as we are obliged to do, our own want of jurisdiction. *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371, 1374 (5th Cir.1980). For the reasons stated below, we hold that we lack appellate jurisdiction because the order sought to be appealed is not a final judgment. We accordingly dismiss the appeal.

This is an employment discrimination suit brought by plaintiffs-appellees under Title VII of the Civil Rights Act and 42 U.S.C. § 1981 against their employer, defendant-appellant C. Itoh-America, a New York corporation wholly owned by a Japanese parent corporation. Defendant moved under Rule 12(b)(6), Fed.R.Civ.P., to dismiss the complaint for failure to state a claim on which relief can be granted, relying on the 1953 Treaty of Friendship, Commerce and Navigation between the United States and Japan (the "Treaty"), particularly the provision of its Article VIII(1) that:

> "[C]ompanies of either Party shall be permitted to engage, within the territories of the other Party, accountants and other technical experts, executive personnel, attorneys, agents and other specialists of their choice."

In 1979 the district court denied the motion to dismiss, relying primarily on the conclusion that defendant-appellant, since it was incorporated under the laws of New York, was a company of the United States, not of Japan, within the definition contained in Article XXII(3) of the Treaty, and hence could not avail itself of the rights provided by Article VIII(1), notwithstanding that it was the wholly owned subsidiary of an admittedly Japanese company. *Spiess v. C. Itoh & Co. (America), Inc.,* 469 F.Supp.

1 (S.D.Tex.1979). The district court also ruled that even if defendant-appellant had standing to raise the Treaty rights of its parent, a question which it did not reach, this would not provide a defense since "[a]ny latitude in hiring provided to Itoh-Japan [the parent] by Article VIII(1) [of the Treaty] extends [only] to employees whom Itoh-Japan itself hires. The hiring questioned by plaintiffs in the instant case is that of Itoh-America [defendant]" and "[a]ny absolute rights granted [by the Treaty] to Itoh-Japan apply only to its own hiring decisions; the practices challenged in the present litigation are those of [the defendant] Itoh-America." *Id.* at 8, 9. The district court, however, certified to this Court under 28 U.S.C. § 1292(b) the question of whether the appellant could successfully urge the Treaty as a defense to the suit. *Id.* at 9–11. We accepted the appeal and reversed, ruling that appellant was a company of Japan within the meaning of Articles VIII(1) and XXII(3), and that Article VIII(1) did provide it a defense, notwithstanding that it was a New York corporation, because it was a wholly owned subsidiary of a Japanese company. *Spiess v. C. Itoh & Co. (America), Inc.,* 643 F.2d 353 (5th Cir.1981). Because we held that appellant was a company of Japan under the Treaty and entitled to assert, in its own right, the protection of Article VIII(1), we did not reach the issue of appellant's standing to raise the Treaty rights of its parent, nor whether the parent's Treaty rights extended to staffing of the subsidiary, nor whether the complained of practices were those of the parent or the subsidiary.

Subsequent to our decision, the Supreme Court held that a corporation incorporated in the United States was not a company of Japan under the Treaty and was not entitled to assert in its own right the protection of Article VIII(1), notwithstanding it was the wholly owned subsidiary of an admittedly Japanese company. *Sumitomo Shoji America, Inc. v. Avagliano,* 457 U.S. 176, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982). In the course of its opinion the Supreme Court observed, "We also express no view as to

whether Sumitomo [the defendant subsidiary] may assert any Article VIII(1) rights of its parent." *Id.* at 189 n. 19, 102 S.Ct. at 2382 n. 19. Thereafter, the Supreme Court granted the application of plaintiffs-appellees for certiorari in the instant case, vacated the judgment of this Court and remanded the case to this Court "for further consideration in light of Sumitomo Shoji America, Inc. v. Avagliano. . . ." *Spiess v. C. Itoh & Co. (America), Inc.,* 457 U.S. 1128, 102 S.Ct. 2951, 73 L.Ed.2d 1344 (1982). Following the Supreme Court's remand, on January 10, 1983, 687 F.2d 129, we remanded to the district court, stating:

> "The parties urge this court to consider the remaining issues in the case. We decline to do so without first remanding the matter to the district court.
>
> "C. Itoh presents several grounds for its motion to dismiss. For example, it argues that it has standing to assert the substantive treaty rights of its parent company. Resolution of these remaining issues may involve several factual determinations that have not yet been made. Therefore, we have determined that no decision should be made by this court at this time. We remand the cause to the district court with directions to conduct further proceedings to finalize the action in light of the mandate of the Supreme Court."

Subsequent to our remand, the parties filed further briefs in the district court, and defendant-appellant reurged its Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief could be granted, generally contending that it had standing to raise the Article VIII(1) Treaty rights of its parent, and that the Japanese staff who filled the positions at issue, though employees of defendant-appellant, were also employees of the parent, which "engaged these Japan staff members, each of whom is an employee of C. Itoh (Japan) [the parent], to work for Defendant" and that:

> "It is undisputed that Japan staff members are employees of the parent company both before and after their rotation to C. Itoh (America) [defendant].

Based upon this and other factors in the Record, especially the integrated relationship of the parent and subsidiary, Japan staff members must also be considered employees of the parent company during their assignment to C. Itoh (America).
> " . . . .
> "[T]here is no reason to assume, as Plaintiffs do, that Article VIII(1) must be limited to employment relationships, thereby excluding other means by which 'to engage' such individuals.
>
> "Even under the most restrictive view, C. Itoh (Japan) [the parent] has certainly exercised its Treaty right 'to engage' the Japan staff. As the Record shows, each member of the Japan staff has been hired and trained by the parent company in Japan. The parent company determines which positions with the subsidiary are to be filled with Japan staff, and selects the individuals to fill those positions. The parent company assigns these individuals to work for the subsidiary for a period of from three to five years. While in the United States, Japan staff compensation and promotions are determined by the parent. After completing their rotation in the United States, they return to Japan where they continue to work for the parent company. Based on these circumstances, there can be no doubt that C. Itoh Japan [the parent] has exercised its Article VIII(1) right 'to engage' managerial and other specialists in this instance."

Defendant-appellant in its submission also stated:

> " . . . Defendant respectfully requests the [District] Court to make the appropriate findings of fact regarding the relationship between the parent and the subsidiary, as well as the circumstances surrounding the selection, assignment, compensation, promotion, and rotation of the Japan staff."

Additionally, defendant-appellant's submission expressly requested the district court "in the event this Motion is denied, to certify the question for appeal to the U.S.

Court of Appeals for the Fifth Circuit pursuant to 28 U.S.C. § 1292(b)."

Thereafter, the district court on September 27, 1983 entered its order denying "defendant's Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6), Fed.R.Civ.P." It is from this order of September 27, 1983 that defendant-appellant seeks to appeal. The order recites that the court, in its 1979 ruling, had found that " '[t]he hiring questioned by plaintiffs in the instant case is that of Itoh-American [defendant].' " The order also recites, in reference to defendant-appellant's request for "additional findings of fact," that pursuant to Rule 52(A), Fed.R.Civ.P., findings of fact "are unnecessary on decisions of Motions under Rules 12 or 56 . . . ." No fact findings are expressly made in the order. The order continues by stating:

> "The defendant, by contending that it has standing to assert the substantive treaty rights of its parent, is attempting to accomplish indirectly what it cannot accomplish directly. The Court does not believe that either the Treaty or the *Sumitomo* case would permit that to occur. Accordingly, defendant's motion to dismiss for failure to state a claim is denied *in toto*."

The district court in the same order directed defendant-appellant to respond to all of plaintiffs' outstanding interrogatories which were the subject of plaintiffs' pending motion to compel discovery. The district court did not act on, or acknowledge the existence of, the defendant's request for certification under section 1292(b).

On October 4, 1983 defendant moved the district court to amend its September 27, 1983 order so as to certify the ruling denying defendant's motion to dismiss for appeal under section 1292(b). Defendant's motion in this respect states that plaintiffs oppose the motion. On October 14, 1983 the district court entered an order directing plaintiffs to file a response to defendant's motion to amend by October 31, 1983 and setting argument thereon for November 21, 1983. On October 24, 1983, before any response by plaintiffs to the motion to amend was filed, defendant-appellant gave its notice of appeal "pursuant to 28 U.S.C. § 1291 . . . from the Order of the district court denying Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, entered in this action on the 27th day of September, 1983."

■ No section 1292(b) certificate has ever been issued in respect to the district court's September 27, 1983 order, and it is apparent that such order is not a "final decision[ ]" of the district court within the generally applicable meaning of that term as it is used in 28 U.S.C. § 1291. The general test of whether a given decision is "final" for these purposes is whether it " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). Obviously, the instant order does not remotely approach meeting that general test, as it does not even establish liability, let alone fix damages or other relief. *See also Newpark Shipbuilding & Repair, Inc. v. Roundtree*, 723 F.2d 399 (5th Cir.1984) (en banc). While not contending otherwise, appellant and appellees nevertheless urge that this appeal lies under section 1291 by virtue of the "collateral order doctrine" of *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In *Cohen* the defendant corporation in a stockholders' suit was allowed to appeal an order denying its motion to require the plaintiffs to post security for costs and attorneys' fees. Holding the order appealable, the Supreme Court stated that it fell within:

> "[T]hat small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated . . . .

> "We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration

with it." *Id.* at 546–47, 69 S.Ct. at 1225–26.

■ We think it evident that the September 27, 1983 order, denying the Rule 12(b)(6) motion to dismiss, for failure to state a claim on which relief can be granted, which raised an essentially merits defense, is wholly unlike the order denying security for costs involved in *Cohen.* In *Coopers & Lybrand* the Court summarized the "collateral order doctrine" as follows:

"To come within the 'small class' of decisions excepted from the final-judgment rule by Cohen, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." 437 U.S. 463 at 468, 98 S.Ct. 2454 at 2458, 57 L.Ed.2d 351 (footnote omitted).

This formulation was again approved in *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 375, 101 S.Ct. 669, 674, 66 L.Ed.2d 571 (1981). We think it evident that the issue resolved by the district court's September 27, 1983 order cannot be fairly described as one "completely separate from the merits of the action"; rather, the issue is one of the existence, *vel non,* of a merits defense. Moreover, *Firestone* makes clear that even if an order meets all the other tests of the "collateral order doctrine," it will nevertheless not be appealable under section 1291 (if not otherwise final) unless it would "be effectively unreviewable on appeal from a final judgment." *Id.* at 376, 101 S.Ct. at 674. Plainly, the September 27, 1983 order denying the Rule 12(b)(6) motion to dismiss would be fully and wholly effectively reviewable on appeal from any final judgment adverse to defendant-appellant. Hence, the September 27, 1983 order is clearly not within the ambit of the "collateral order doctrine" as it is normally defined, understood and applied. *See Parr v. United States,* 351 U.S. 513, 519, 76 S.Ct. 912, 916, 100 L.Ed. 1377 (1956); *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371, 1378 n. 8 (5th Cir.1980).

Appellant and appellees, however, rely on *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). *Nixon* was a civil suit against former President Nixon in his individual capacity for alleged violations of the plaintiff's civil rights claimed to have been committed by the defendant while President. The defendant sought to appeal the district court's denial of his motion for summary judgment based on the claimed absolute immunity which the office of President afforded him. The Supreme Court held that the denial of the motion for summary judgment claiming such absolute immunity was appealable pursuant to section 1291 under the "collateral order doctrine." A recognized text has explained this decision as follows: "The absolute immunity is conceived to be a protection against the burdens of trial as well as liability; immediate appeal is the only effective means of avoiding the burdens of trial." 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3911, 1982 pocket part (Wright, Miller, Cooper & Elliott) at 197. We agree with this explanation. The *Nixon* opinion expressly notes, though in connection with the issue of absolute immunity itself rather than appealability as such, that "[b]ecause of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government." 457 U.S. 731 at 751, 102 S.Ct. 2690 at 2703, 73 L.Ed.2d 349 at 365. It is relevant for these purposes that the "concern" to which reference is made is that with "private lawsuits," not "private liability." Moreover, the *Nixon* opinion expressly relies in respect to its appealability holding on *Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (immunity under the Speech and Debate Clause) and *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (immunity under the Double Jeopardy Clause). *See Nixon,* 457 U.S. 731 at 743, 102 S.Ct. 2690 at 2698, 73 L.Ed.2d 349 at 359. In both of the cited decisions the Court emphasized that the purpose of the immunity created by the particular constitutional clause in question was not merely to immunize the protected individual from

punishment or liability but also to immunize him from *trial* seeking to impose such punishment or liability. An appeal after final judgment would be wholly ineffective in respect to vindicating the latter protective purpose, and hence an immediate appeal from a pretrial order denying the claimed immunity was necessary. As the Court said in *Helstoski*:

> "Here, the holding of Abney becomes highly relevant; by analogy, if a Member 'is to avoid exposure to [being questioned for acts done in either House] and thereby enjoy the full protection of the Clause, his . . . challenge to the indictment must be reviewable before . . . exposure [to trial] occurs.' Abney, supra, [431 U.S. 651] at 662, 97 S.Ct. 2034 [at 2041], 52 L.Ed.2d 651." 442 U.S. 500 at 508, 99 S.Ct. 2445 at 2449, 61 L.Ed.2d at 30.

We do not believe that the present case is within the rationale of the *Nixon, Abney* and *Helstoski* line of cases, for, unlike the immunity involved in those cases, the Treaty, in our view, though it is intended to confer substantive rights on Japanese companies in respect to certain employment practices, is nevertheless not intended to confer immunity from the litigation process as such, certainly not to American subsidiaries of Japanese companies which are merely seeking to assert their Japanese parents' substantive rights. We have stated that the *Cohen* doctrine "should be strictly construed," *Arango v. Guzman Travel Advisors Corp., supra* at 1378 n. 8, and have likewise narrowly restricted other exceptions to the finality requirement. *Newpark Shipbuilding & Repair, Inc. v. Roundtree, supra.* We accordingly hold that the September 27, 1983 order denying defendant-appellant's Rule 12(b)(6) motion to dismiss is not appealable under section 1291 as it is neither a final decision of the district court nor within any exception to the finality requirement applicable to section 1291 appeals.

■ Appellant also urges that the September 27, 1983 order denying its Rule 12(b)(6) motion to dismiss is appealable because the issue of whether appellant has standing to assert the substantive Treaty rights of its parent company was raised in appellant's section 1292(b) appeal from the district court's 1979 order denying appellant's Rule 12(b)(6) motion to dismiss, and is raised again on this attempted appeal, "and to date no appellate court has rendered any determination thereon." Appellant cites no authority in support of this proposition, and we have difficulty in understanding just what particular legal theory of appealability appellant intends to advance thereby. Perhaps appellant is contending that the prior section 1292(b) certificate extends to the September 27, 1983 order. However, appellant does not predicate its appeal on section 1292(b). In any event, any such contention would be clearly lacking in merit. The 1979 section 1292(b) certificate for the 1979 order did not purport to apply to any other order, and appellant and the district court have plainly recognized this, as appellant twice requested section 1292(b) certification of the September 27, 1983 order and the district court ordered briefing and a hearing on the second request. Nothing in our prior orders suggests that the earlier section 1292(b) certification would "carry over." When the September 27, 1983 order was issued the case was in a distinctly different posture, for section 1292(b) purposes, than it was in 1979, as by 1983 one central, and previously quite debatable, issue of law had been resolved, namely, whether American corporations, which were wholly owned subsidiaries of Japanese corporations, themselves had substantive rights under the Treaty. We are unable to find anything in the pre-September 1983 history of this case which can properly serve as a basis for appellate jurisdiction of the instant attempted appeal.

For the reasons above stated, we hold that we are without appellate jurisdiction over the instant attempted appeal. Therefore, the appeal is dismissed for want of jurisdiction.

APPEAL DISMISSED.