Lawrence O. MALONE, Appellant,

v.

UNITED STATES, Appellee.

No. 83–60.

District of Columbia Court of Appeals.

Submitted Dec. 9, 1983.

Decided Sept. 26, 1984.

Enid Hinkes, Washington, D.C., appointed by the court, for appellant.

Wallace H. Kleindienst, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrel and Christopher A. Myers, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before PRYOR and BELSON, Associate Judges, and GALLAGHER, Associate Judge, Retired.

BELSON, Associate Judge:

Appellant appeals a denial of his motion to dismiss the indictment for violation of the Interstate Agreement on Detainers (IAD), D.C. Code § 24–701 (1981). His argument for dismissal rests on the fact that while serving a Maryland sentence he was brought to the District of Columbia to face charges, but then through administrative error was returned briefly to Maryland before his charges here were disposed of. We affirm.

In March 1981, appellant was indicted for second-degree burglary, D.C. Code § 22–1801(b) (1981), and destruction of property, id., § 22–403. His case was continued for trial in October 1981. In September 1981 he was arrested on other charges in Maryland. District of Columbia authorities issued a writ of habeas corpus ad prosequendum to secure appellant's presence for trial on the D.C. charges. The writ apparently was not executed. In March 1982, D.C. authorities lodged a detainer against appellant in Maryland. A month later appellant was convicted and sentenced in Maryland on the Maryland charges, and he began to

serve his Maryland prison term. The D.C. prosecutor then issued a writ of habeas corpus ad prosequendum to bring appellant to the District to stand trial on an unrelated misdemeanor charge. Appellant arrived in D.C. on August 2 or 3, 1982.

Appellant's unrelated misdemeanor charge was disposed of, and a status hearing on the burglary and destruction of property charges was set for mid-September 1982. When defense counsel did not appear on that date, the hearing was rescheduled for October 13, 1982. A college intern in the United States Attorney's Office, apparently believing that all charges against appellant had been resolved, mistakenly arranged for his return to Maryland on September 21. On September 23 the United States Attorney's Office discovered the mistake and immediately directed another writ of habeas corpus ad prosequendum to Maryland authorities. Appellant was returned to D.C. on October 13 or 14. The trial court denied his subsequent motion to dismiss the indictment for a violation of the IAD. On November 12, the court, sitting without a jury, found appellant guilty upon stipulated facts. The court imposed sentences consecutive to each other and to appellant's Maryland sentence.

Appellant argues that the indictment should have been dismissed pursuant to Article IV(e) of the IAD. Article IV(e) applies once a prisoner has been transferred from the sending state—here Maryland—to the receiving state—here D.C.— upon written request of the receiving state for temporary custody for proceedings on charges of the receiving state. *See* Articles IV(a), V(a) (describing transfer procedure). Article IV(e) reads,

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

After having been brought to D.C., appellant was returned to Maryland before trial on the D.C. charges. This transfer, he argues, was a clear violation of the language of Article IV(e). Appellant contends that because Congress explicitly allowed exceptions to the sanctions imposed by other sections of the IAD, *see, e.g.,* Articles III(a) and IV(c), the absence of exceptions to Article IV(e)'s sanction shows its intent that courts apply the sanction flatly. Congress, he argues, must have intended to deter future violations through use of a stringent mandatory sanction. Thus, appellant concludes, the trial judge erred in ruling that the particular circumstances of this case permitted him to deny the motion to dismiss the indictment.

We think that Congress did not intend the drastic sanction of Article IV(e) to apply to a case such as this. As we have noted, "Article IV(e) has not been a basis for reversal in those cases where its mechanical application would thwart the Agreement's purposes.... [I]n view of the severity of the sanctions, issues arising from the Agreement should be viewed with circumspection." *Christian v. United States,* 394 A.2d 1, 41 (D.C.1978) (per curiam) (citations omitted), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). In *Christian* and in *Gale v. United States,* 391 A.2d 230, 234 (D.C.1978), *cert. denied,* 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979), we looked to the purposes of the IAD and decided that application of the Article IV(e) sanction would not further those purposes. We follow that path again in holding that, the purposes of the IAD were not contravened in this case and so the motion to dismiss the indictment was properly denied.

Article I of the IAD describes the general problems that the statute is designed to address and sets forth the law's goal:

> The party States find that charges outstanding against a prisoner, detainers

based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.

We have noted specifically that "Article IV(e) was designed to avoid the shuttling back and forth between jurisdictions and the resulting disruptive effect such transfers would have on a consistent treatment program and to promote the speedy disposition of outstanding charges upon which the detainers were based." *Christian, supra*, 394 A.2d at 40. The provisions of Article IV(e) aim to enhance prisoners' rehabilitation by limiting prosecutors' freedom repeatedly to demand prisoners' presence. The dissenting judge in *United States v. Mauro*, 544 F.2d 588 (2d Cir.1976), *rev'd*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), noted,

> The purpose of Art. IV is to assure that states which formerly were powerless to obtain production of prisoners held by other states or by the federal government will now be able to secure their presence, subject to certain conditions. One of these conditions is that the receiving state, after obtaining the detained prisoner merely upon request, will not abuse that privilege by returning him untried, since this would have the effect of reinstating and indefinitely prolonging the detainer lodged against him by the receiving state, with its detrimental effects.

*Id.*, 544 F.2d at 597 (Mansfield, J., dissenting). The Supreme Court adopted this reasoning in reversing the Second Circuit majority. 436 U.S. at 361 n. 26, 98 S.Ct. at 1847 n. 26. As the Sixth Circuit has concluded, "Article IV(e) is intended to prevent prosecutorial abuse of the simplified method for obtaining prisoners for the disposition of outstanding charges against them, a privilege made available to prosecutors under Article IV. The sanction set forth in Article IV(e) is designed to effectuate that purpose." *United States v. Dixon*, 592 F.2d 329, 336 (6th Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979).

In deciding whether Congress would have intended the sanction of Article IV(e) to apply, then, we will look to whether the transfer has contravened the overarching general purpose of the IAD, to eliminate "uncertainties which obstruct programs of prisoner treatment and rehabilitation," Art. I, and, in particular, to whether the prosecutor in the receiving state has abused the simplified method of obtaining the prisoner's presence. The brief mistaken transfer in this case did not threaten appellant's treatment or rehabilitation program and there is no indication that the prosecutor abused the privilege of obtaining appellant for trial.

Appellant has not alleged that he was involved in any rehabilitation program in Maryland or that the transfer in any way affected his rehabilitation.[1] During the motion hearing, the trial judge asked appellant's counsel how the brief transfer had harmed appellant. She said only that the transfer had been inconvenient for him, that he had lost some of his possessions, that his visitors may have been confused about where he was, and that she herself "could not reach him at the jail when I

---

1. Appellant would not have needed to show that the transfer slowed his rehabilitation. Such a proposition would be very difficult to prove: no one can know whether rehabilitation has been successful until a prisoner is released from pris-

on. But, when asked, appellant's counsel here did not even state that appellant was part of any rehabilitation effort. This circumstance, combined with the other facts we discuss below,

wanted to reach him."[2] Though she had the opportunity to do so, counsel did not assert that the untimely transfer had affected any program of treatment or rehabilitation in which appellant was engaged.

On the facts of this case, it is particularly unlikely that appellant could have shown any interference with rehabilitation. When appellant was brought to D.C. in early August 1982, any rehabilitation program in which he might have been participating in the Maryland prison was interrupted. This initial interruption was of course consistent with the IAD; Article IV does not restrict prosecutors to obtaining only those prisoners who are not participating in rehabilitation programs when the prosecutor demands their presence. Appellant was sent back to Maryland for approximately 20 days in the middle of his D.C. confinement. Two days after the transfer the D.C. authorities lodged a writ of habeas corpus ad prosequendum with the Maryland prison. The writ eliminated any uncertainty about whether D.C. intended to prosecute appellant. During only those 2 days, then, could the Maryland correctional authorities or appellant himself have been unsure about whether appellant should be reintegrated into Maryland prison life. There is no suggestion that those 2 days of uncertainty affected appellant's program of treatment or rehabilitation. Certainly, any impact was *de minimis*.

In previous cases we have considered defendants' failure to show that they were engaged in rehabilitation programs to be important to our decision whether to apply sanctions. *See Christian v. United States, supra,* 394 A.2d at 40 ("There is nothing in the legislative history or in the Agreement itself to indicate that its provisions were intended to apply to persons who were not involved in rehabilitative programs....

Appellants have offered no evidence to show they were engaged in or even eligible for rehabilitative programs at the time they were confined in [the sending jurisdiction's] jails"; opinion concluded that Article IV(e) sanction should not apply). *Cf. Smith v. United States,* 470 A.2d 315, 323 (D.C. 1983) (Ferren, J., concurring) (listing the harms, including interference with rehabilitation programs, that unresolved detainers may cause inmates; "[o]n this record, however, appellant has not demonstrated that he suffered any of these ill effects").

Many other courts as well have concluded that indictments should not be dismissed under Article IV(e) if the prisoner has not shown that his return to the sending state before trial in the receiving state impeded or affected his rehabilitation. *See, e.g., Sassoon v. Stynchombe,* 654 F.2d 371 (5th Cir.1981); *Huff v. United States,* 599 F.2d 860, 863 (8th Cir.), *cert. denied,* 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979); *United States v. Chico,* 558 F.2d 1047, 1049 (2d Cir.1977), *cert. denied,* 436 U.S. 947, 98 S.Ct. 2850, 56 L.Ed.2d 788 (1978); *Hawkins-El v. Williams,* 483 F.Supp. 415, 421 (D.Md.1979); *United States v. Cumberbatch, supra* note 2, 438 F.Supp. at 978–79; *People v. Cella,* 114 Cal.App.3d 905, 921, 170 Cal.Rptr. 915, 924 (1981); *State v. Sassoon,* 240 Ga. 745, 748–49, 242 S.E.2d 121, 123 (1978); *Neville v. Friedman,* 67 Ill.2d 488, 493–94, 10 Ill.Dec. 575, 367 N.E.2d 1341, 1344 (1977), *cert. denied,* 437 U.S. 903, 98 S.Ct. 3088, 57 L.Ed.2d 1132 (1978); *State v. Allen,* 269 S.C. 233, 239, 237 S.E.2d 64, 67 (1977).

The fact that the transfer was inadvertent reinforces our conviction that we would not be furthering the purposes of the IAD if we ordered this indictment dismissed. As we said above, Article IV(e)'s sanction was designed to prevent prosecu-

convinces us that dismissal of the indictment was not warranted.

**2.** Of these, the last, appellant's possible isolation from counsel, is the most troubling. The IAD was not intended, however, to address that harm. *United States v. Cumberbatch,* 438

F.Supp. 976, 979 (S.D.N.Y.1976), *aff'd,* 563 F.2d 49 (2d Cir.1977), *cert. denied,* 436 U.S. 946, 98 S.Ct. 2850, 56 L.Ed.2d 788 (1978). *But see United States v. Thompson,* 562 F.2d 232, 234 (3d Cir.1977) (en banc), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978).

tors from abusing the privilege of being able easily to obtain prisoners from other jurisdictions; abuses such as repeated transfers could impede prisoners' rehabilitation. *United States v. Dixon, supra,* 592 F.2d at 336. The prosecutor in this case did not transfer appellant intentionally. A college intern, apparently acting out of confusion or a misunderstanding of office procedures, mistakenly authorized the transfer. The United States Attorney's Office lodged another writ of habeas corpus ad prosequendum in Maryland immediately upon discovering the mistake. The actions of the prosecutor here did not amount to an abuse of the privilege of easy prisoner access. Nor is there any danger that in future cases other prosecutors will use this sort of transfer as an abuse of that privilege; "the potential for abuse of the detainer system is not present." *Christian v. United States, supra,* 394 A.2d at 40.

■ We hold, then, that when a transfer cannot be said to have been an abuse of the privilege of easy access and when an appellant has not shown that a very brief, mistaken transfer affected his rehabilitation, dismissal of the indictment would not further the purposes of the IAD and therefore is not warranted.[3] We are aware that several other courts, noting the flat language of the rule, the need for nationally-uniform application of a nationwide compact, and the undesirability of opening the door to extensive factual litigation in every Article IV(e) case, have approved dismissal regardless of whether the sanction furthered the IAD's purposes. *See, e.g., United States v. Thompson,* 562 F.2d 232, 234–35 (3d Cir.1977) (en banc), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978); *United States v. Persinger,* 562 F.Supp. 557, 561 (W.D.Pa.1982); *United States v. Schrum,* 504 F.Supp. 23, 25–28 (D.Kan.1980), *aff'd,* 638 F.2d 214 (10th Cir. 1981); *United States v. Kenaan,* 422 F.Supp. 226, 228 (D.Mass.1976), *rev'd on*

*other grounds,* 557 F.2d 912 (1st Cir.1977), *cert. denied,* 436 U.S. 943, 98 S.Ct. 2844, 56 L.Ed.2d 784 (1978); *United States v. Sorrell,* 413 F.Supp. 138, 141–42 (E.D.Pa.1976), *aff'd,* 562 F.2d 227 (3d Cir.1977) (en banc), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978). We agree that the concerns that these courts describe are serious and weighty. We therefore emphasize that our holding today is narrow and specific on the facts of this case.

*Affirmed.*

---

**3.** The trial court said in colloquy with counsel *that the decision* whether to apply Article IV(e)'s sanctions was one within its discretion. [We do not agree, as our holding today is on a question of law.]