540 A.2d 805

Gerald T. BUNTING

v.

STATE of Maryland.

No. 153, Sept. Term, 1986.

Court of Appeals of Maryland.

May 5, 1988.

Eldridge, J., concurred and filed an opinion.

---

William A. Lee Clarke, III, Salisbury, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH *, McAULIFFE and ADKINS, JJ.

PER CURIAM.

Under Article III(d) of the Interstate Agreement on Detainers, Maryland Code (1957, 1987 Repl.Vol.), Art. 27, § 616D(d), if a detainer is lodged in Maryland against a defendant who is imprisoned in another jurisdiction that is party to the Agreement and if the defendant makes a "request for final disposition" of the charges against him, he has a right to stand trial in Maryland on those charges before being "returned to the original place of imprisonment." Article III(d) further provides that a court should dismiss with prejudice the charges against the defendant if he is "returned to the original place of imprisonment" without first standing trial. This provision is commonly called the "single transfer rule" of Article III of the Interstate Agreement on Detainers. The question in this case is whether a circuit court's pretrial ruling that this single transfer rule was not violated and the court's consequent refusal to dismiss the charges against a defendant constitute an appealable judgment.

I.

In early 1986, while imprisoned in the federal penitentiary at Lewisburg, Pennsylvania, the defendant Gerald T. Bunting was charged, in Somerset County, Maryland, with numerous counts of felony theft.[1] On account of these charges, the State of Maryland lodged detainers with the federal authorities at Lewisburg, who are subject to the

---

\* Couch, J., now retired, participated the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. The defendant had pleaded guilty to federal charges of defrauding customers of his grain elevator in Princess Anne, Maryland. The state charges arose out of substantially the same transactions.

Interstate Agreement on Detainers. 18 U.S.C.App. § 2 (1982). Pursuant to the Agreement, the defendant request- ed final disposition of the state charges. Shortly there- after, on August 4, 1986, the defendant was transported to Somerset County for the purpose of attending a hearing on several preliminary motions filed by the defense.[2] On the next day, August 5, the Sheriff of Somerset County brought the defendant back to Lewisburg. The defendant's trial did not take place before Maryland officials surren- dered custody of him to federal authorities.

On August 11, 1986, the defendant moved to dismiss the Maryland charges, claiming that the State had violated the single transfer rule of Article III(d).[3] The circuit court denied the motion,[4] and the defendant appealed to the Court of Special Appeals. In that court, the State moved to dismiss the appeal on the ground that it was not from a final judgment. The defendant countered that the collat- eral order doctrine authorized the appeal. The Court of

---

**2.** Initially, the purpose of the hearing was to consider the defendant's suggestion of removal on the ground of prejudicial pretrial publicity. Shortly before the hearing, however, the defendant also moved to dismiss the charges or to disqualify the State's Attorney. The hearing apparently encompassed these motions as well.

**3.** From this perspective, the defendant's motion to dismiss appears somewhat disingenuous. As pointed out in note 2, *supra*, the defend- ant was transported to Somerset County for a hearing on a number of pretrial motions made by the defense. Apparently, neither the de- fendant, the State, nor the circuit judge anticipated that a trial on the merits would take place before the defendant returned to Lewisburg. Moreover, in one of his preliminary motions, the defendant sought to disqualify the State's Attorney from further participation in the case. Thus, had the defendant prevailed on this motion, it is obvious that some trial delay would have been required.

**4.** The circuit court seems to have taken the position that Article III(d) should not be read literally, but should instead be interpreted as requiring the defendant to prove that some prejudice resulted from the violation of the single transfer rule. *See generally Boyd v. State,* 51 Md.App. 197, 204, 441 A.2d 1133, 1137–1138, *aff'd,* 294 Md. 103, 447 A.2d 871 (1982), and cases cited therein. *See also Malone v. United States,* 482 A.2d 768 (D.C.App.1984), collecting some of the cases; *People v. Dye,* 69 Ill.2d 298, 13 Ill.Dec. 695, 371 N.E.2d 630 (1977). We have no occasion to express a view on this issue in the present case.

Special Appeals disagreed with the defense contention and granted the State's motion to dismiss.

Thereafter, we granted the defendant's petition for a writ of certiorari.

## II.

■ Code (1974, 1984 Repl.Vol.), § 12–301 of the Courts and Judicial Proceedings Article, grants a right of appeal only from "final judgments." *See, e.g., Harris v. Harris,* 310 Md. 310, 314, 529 A.2d 356, 358 (1987); *Clark v. Elza,* 286 Md. 208, 212, 406 A.2d 922, 924 (1979); *Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 90, 394 A.2d 801, 803–804 (1978). Ordinarily, a circuit court judgment is final only if it terminates the action in that court. *See, e.g., Houghton v. County Comm'rs of Kent Co.,* 305 Md. 407, 412, 504 A.2d 1145 (1986); *Sigma Repro. Health Cen. v. State,* 297 Md. 660, 665–666, 467 A.2d 483 (1983); *Schultz v. Pritts,* 291 Md. 1, 6, 432 A.2d 1319 (1981). In this case, the challenged order is obviously not "final" in the normal sense. The criminal prosecution against the defendant is still pending in the circuit court.

Nevertheless, we have in recent years adopted the so-called "collateral order doctrine." *See, e.g., State v. Hogg,* 311 Md. 446, 535 A.2d 923 (1988); *Harris v. Harris, supra,* 310 Md. at 315–316, 529 A.2d at 358–359; *Public Service Comm'n v. Patuxent Valley,* 300 Md. 200, 206, 477 A.2d 759, 762 (1984); *Clark v. Elza, supra,* 286 Md. at 212, 406 A.2d at 925; *Peat & Co. v. Los Angeles Rams, supra,* 284 Md. at 91–92, 394 A.2d at 804. As stated in *Public Service Comm'n v. Patuxent Valley, supra,* 300 Md. at 206, 477 A.2d at 762, the collateral order doctrine "treats as final and appealable a limited class of orders which do not terminate the litigation in the trial court." *See Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 545–547, 69 S.Ct. 1221, 1225–1226, 93 L.Ed. 1528, 1536 (1949). In order to fit within this narrow class, however, the challenged order generally must meet four requirements (*Clark v. Elza, supra,* 286 Md. at 213, 406 A.2d at 925):

" '[T]he order must [ (1) ] conclusively determine the disputed question, [ (2) ] resolve an important issue[, (3) be] completely separate from the merits of the action, and [ (4) ] be effectively unreviewable on appeal from a final judgment.' "

*See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351, 357–358 (1978).

■■■ We need not consider whether the challenged order in this case satisfies the first three requirements, as we are of the opinion that it fails to satisfy the fourth requirement. If the defendant is convicted, his contentions will be effectively reviewed on appeal from the final judgment of conviction.

In attempting to show that the challenged order in this case is not effectively reviewable on appeal, the defendant relies primarily on *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). In that case, the Supreme Court held that the collateral order doctrine encompassed the denial of a criminal defendant's motion to dismiss an indictment on the ground of double jeopardy. Relying on the language of the federal Constitution and on prior decisions, the Court reasoned that the guarantee against double jeopardy is more than a prohibition against double punishment; by its very nature, the Double Jeopardy Clause grants a defendant the right not to stand trial under certain circumstances. 431 U.S. at 659–662, 97 S.Ct. at 2040–2042, 52 L.Ed. at 660–662. That right would be irretrievably lost if a defendant had to await termination of the criminal trial before appealing an order denying a motion to dismiss on the ground of double jeopardy. Consequently, the Supreme Court concluded that the order was not effectively reviewable on appeal from a final judgment of conviction. *See also Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (involving the speech and debate clause of the federal Constitution, Art. I, § 6).

This Court has also recognized that, under the collateral order doctrine, a defendant may take an immediate appeal from the denial of a motion to dismiss on the ground of

double jeopardy. *Parrott v. State,* 301 Md. 411, 424–425, 483 A.2d 68, 75 (1984). *See Russell v. State,* 310 Md. 96, 98 n. 1, 527 A.2d 34, 34 n. 1 (1987); *Robinson v. State,* 307 Md. 738, 741 n. 2, 517 A.2d 94, 96 n. 2 (1986); *Huffington v. State,* 302 Md. 184, 187 n. 2, 486 A.2d 200, 202 n. 2 (1985); *Evans v. State,* 301 Md. 45, 49 n. 2, 481 A.2d 1135, 1137 n. 2 (1984); *Bowling v. State,* 298 Md. 396, 401 n. 4, 470 A.2d 797, 799 n. 4 (1984); *In re Mark R.,* 294 Md. 244, 246 n. 2, 449 A.2d 393, 395 n. 2 (1982).

By analogy to the double jeopardy cases, the defendant argues that, because Article III(d) prescribes the remedy of dismissal for violations of the single transfer rule, he too has a right not to stand trial. He thus concludes that the alleged denial of his rights under the single transfer rule are effectively unreviewable on appeal. We disagree.

As the Supreme Court has stated, in the context of the collateral order doctrine, "Double jeopardy and speech or debate rights are *sui generis." Flanagan v. United States,* 465 U.S. 259, 267, 104 S.Ct. 1051, 1055, 79 L.Ed.2d 288, 295 (1984). Likewise, this Court has recognized that, under the collateral order doctrine, an exception to the general rule of finality may well be limited to its own unique factual circumstances. *See, e.g., Public Service Comm'n v. Patuxent Valley, supra,* 300 Md. at 207, 210, 477 A.2d at 763, 764.

This Court's decision in *Stewart v. State,* 282 Md. 557, 386 A.2d 1206 (1978), clearly illustrates that only a very few rights are analogous to the Double Jeopardy Clause's entitlement not to stand trial. In that case, we held that the denial of a pretrial motion to dismiss on the ground of an alleged violation of the defendant's speedy trial rights did not fall within the collateral order doctrine. In reaching that decision, we largely relied on *United States v. Mac-Donald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978), in which the Supreme Court distinguished *Abney v. United States, supra,* by pointing out (435 U.S. at 861, 98 S.Ct. at 1553, 56 L.Ed.2d at 27): "It is the delay before trial, not the trial itself, that offends against the constitutional guarantee

of a speedy trial." *See also Flanagan v. United States, supra,* 465 U.S. at 267, 104 S.Ct. at 1055–1056, 79 L.Ed.2d at 296. Similarly, in this case, the defendant has a right not to be "returned to his original place of imprisonment" before standing trial, within the meaning of Article III(d); he does not have a right to avoid the trial itself.

The defendant's position emphasizes the statutory sanction of dismissal. But merely because a defendant may have the charges against him dismissed if the trial court accepts his contentions, it does not follow that his statutory right is to avoid trial altogether. As the Supreme Court observed in *United States v. MacDonald, supra,* 435 U.S. at 860 n. 7, 98 S.Ct. at 1552–1553 n. 7, 56 L.Ed.2d at 27 n. 7):

"Certainly, the fact that this court has held dismissal of the indictment to be the proper remedy when the Sixth Amendment right to a speedy trial has been violated ... does not mean that a defendant enjoys a 'right not to be tried,' which must be safeguarded by interlocutory appellate review. Dismissal of the indictment is the proper sanction when a defendant has been granted immunity from prosecution, when his indictment is defective, or, usually, when the only evidence against him was seized in violation of the Fourth Amendment. Obviously, however, this has not led the Court to conclude that such defendants can pursue interlocutory appeals."

Admittedly, the right to a single transfer is more closely related to the remedy of dismissal than is the right to a speedy trial. In the case of the speedy trial right, dismissal is the prophylactic remedy that the courts have selected over several possible alternatives. In the case of the single transfer rule, however, the remedy of dismissal is statutorily integrated with the right itself. Nonetheless, the basic right under Article III(d) remains a right not to be "returned to the original place of imprisonment," within the meaning of that Article, without standing trial; it is not a right to avoid the trial itself.

Another difficulty with the defendant's argument is that numerous "rights" can readily be characterized as entitling

a party to avoid trial under some circumstances. For example, the "right" to summary judgment might be characterized as a right not to stand trial unless the opposing party has created a genuine issue of material fact. Similarly, the statute of limitations might be characterized as granting a defendant a right not to be tried out of time. *See Mitchell v. Forsyth,* 472 U.S. 511, 550–551, 105 S.Ct. 2806, 2828–2829, 86 L.Ed.2d 411, 441 (1985) (Brennan, J., concurring in part and dissenting in part). If all "rights" which could be characterized in this manner were treated like the right against double jeopardy, the collateral order doctrine would largely erode the final judgment rule. Consequently, it is important that we narrowly construe the notion of an entitlement not to be sued or prosecuted.

A number of courts have already recognized this need. For example, it has been held that the collateral order doctrine does not extend to denials of motions to dismiss or motions for summary judgment on the grounds of state action immunity under the federal antitrust laws. *See Huron Valley Hosp., Inc. v. City of Pontiac,* 792 F.2d 563, 567 (6th Cir.), *cert. denied,* 479 U.S. ——, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986).[5] It has also been decided that the collateral order doctrine does not encompass an alleged immunity from suit based on the Petition Clause of the First Amendment, *Segni v. Commercial Office of Spain,* 816 F.2d 344, 345–346 (7th Cir.1987).[6] An order denying an immunity claim under the Eleventh Amendment has been held not to be within the collateral order doctrine. *Libby v. Marshall,* 833 F.2d 402, 405–406 (1st Cir.1987).[7] As the court stated in *Libby v. Marshall, supra,* 833 F.2d at 406: "[I]t cannot be convincingly argued that the entitlement

---

**5.** *But cf. Commuter Transp. Systems, Inc. v. Hillsborough County Aviation Auth.,* 801 F.2d 1286, 1289–1290 (11th Cir.1986).

**6.** *Compare Smith v. McDonald,* 737 F.2d 427, 428 (4th Cir.1984), *aff'd,* 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985).

**7.** *But cf. Minotti v. Lensink,* 798 F.2d 607, 608 (2d Cir.1086), *cert. denied,* 482 U.S. ——, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987).

possessed by the state under the Eleventh Amendment is an entitlement not to stand trial."

A similar holding is found in *Spiess v. C. Itoh & Co. (America), Inc.*, 725 F.2d 970 (5th Cir.), *cert. denied*, 469 U.S. 829, 105 S.Ct. 115, 83 L.Ed.2d 58 (1984). In that civil rights case, the defendant, arguing for an immediate appeal, contended that it was entitled not to be sued because, as the subsidiary of a Japanese business, its employment practices were, in effect, immunized by a treaty providing that Japanese companies could engage employees of their choice. Rejecting this argument, the court held that an immediate appeal did not lie from the denial of the defendant's motion to dismiss. (725 F.2d at 975):

> "We do not believe that the present case is within the rationale of the *Nixon [v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982)]*, Abney* and *Helstoski* line of cases, for, unlike the immunity involved in those cases, the Treaty, in our view, though it is intended to confer substantive rights on Japanese companies in respect to certain employment practices, is nevertheless not intended to confer immunity from the litigation process as such...." [8]

In sum, the idea that an issue is not effectively reviewable after the termination of the trial because it involves a "right" to avoid the trial itself, should be limited to double

---

8. In *Nixon v. Fitzgerald,* the Supreme Court held that the President of the United States "is entitled to absolute immunity from damages liability predicated on his official acts," 457 U.S. at 749, 102 S.Ct. at 2701, 73 L.Ed.2d at 363. In addition, because the issue of absolute immunity presented a " 'serious and unsettled' " question of law, the Court held that the collateral order doctrine encompassed Mr. Nixon's appeal from the denial of his motion for summary judgment, 457 U.S. at 743, 102 S.Ct. at 2698, 73 L.Ed.2d at 359. Nonetheless, in justifying its conclusion on the merits, the Supreme Court stated (457 U.S. at 751, 102 S.Ct. at 2702, 73 L.Ed.2d at 365), "Because of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government." Based on this language, the court in *Spiess v. C. Itoh & Co. (America), Inc., supra,* reasoned that, under *Nixon v. Fitzgerald,* the President is immune not only from liability but from suit itself, 725 F.2d at 974–975.

jeopardy claims and a very few other extraordinary situations. Otherwise, as previously indicated, there would be a proliferation of appeals under the collateral order doctrine. This would be flatly inconsistent with the long-established and sound public policy against piecemeal appeals.[9]

As the circuit Court's order in the present case did not fall within the collateral order doctrine, the Court of Special Appeals correctly dismissed the appeal.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.

ELDRIDGE, Judge, concurring:

I concur with the result and with all of the Court's opinion except footnote 9. In my view, the approach toward the collateral order doctrine taken in the present case cannot be reconciled with the approach taken by the Court in *State v. Hogg*, 311 Md. 446, 535 A.2d 923 (1988). *Hogg* should be overruled.

---

**9.** This Court's recent decision in *State v. Hogg*, 311 Md. 446, 535 A.2d 923 (1988), should not be viewed as reflecting a contrary policy. While the opinion in that case may contain some broad language relating to assertions of immunity from the trial itself, such language must be read in the context of what was before the Court.