

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2000

# In Re Montgomery Cty.

Precedential or Non-Precedential:

Docket 99-1371

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"In Re Montgomery Cty." (2000). *2000 Decisions.* Paper 125.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/125

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 9, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 99-1371 and 99-1379

IN RE: MONTGOMERY COUNTY; MONTGOMERY COUNTY
COMMISSIONERS; MARIO MELE; RICHARD BUCKMAN;
JOSEPH M. HOEFFEL, III

        Petitioners, No. 99-1371

ROBERT E. WRIGHT, SR.

v.

MONTGOMERY COUNTY; MONTGOMERY COUNTY
COMMISSIONERS; MARIO MELE; RICHARD BUCKMAN;
JOSEPH HOEFFEL; MAILLIE FALCONIERO & COMPANY
LLP; GEORGE FALCONERO

        Montgomery County; Montgomery County
        Commissioners; Mario Mele; Richard Buckman,
        Joseph Hoeffel,
        Appellants, No. 99-1379

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 96-cv-04597)
District Judge: The Honorable Herbert J. Hutton

ARGUED July 27, 1999

BEFORE: SLOVITER, NYGAARD, and McKEE,
Circuit Judges.

(Filed June 9, 2000)

Timothy T. Myers, Esq. (Argued)
John M. Elliott, Esq.
Eric J. Bronstein, Esq.
Krista K. Beatty, Esq.
Elliott, Reihner, Siedzikowski
 & Egan
925 Harvest Drive
Union Meeting Corporate Center
Blue Bell, PA 19422

 Attorneys for Petitioners/
Appellants/Cross Respondent/
Appellee

Theodore Q. Thompson, Esq.
 (Argued)
Theodore Q. Thompson & Associates
10 North Main Street
Ambler, PA 19002

 Attorney for Respondent/Appellee/
Cross Petitioners/Appellants

OPINION OF THE COURT

NYGAARD, Circuit Judge.

This is an interlocutory appeal from the District Court's pre-trial denial of the Appellants' claims to absolute and qualified immunity from suit. Although the District Court did not expressly address the Appellants' immunity claims, it denied the motions for summary judgment in which those claims were asserted. We hold that this implicit denial of the Appellants' immunity claims is sufficient to confer appellate jurisdiction. We will affirm.

I. Facts and Procedure

In July 1994, Montgomery County's Salary Board promoted Robert Wright to Director of the County's Department of Housing Services. At the time, Wright had been a County employee for approximately 15 years, working first for its Redevelopment Authority, and then for

the Department of Housing Services. Beginning in 1993, a number of Montgomery County homeowners contacted the United States Department of Housing and Urban Development to lodge complaints against Montgomery County's Department of Housing Services. The complaints accused Department officials of mismanagement, negligence and undue delay in their administration of the County's HUD-funded Home Improvement Program. The complaints specifically mentioned Wright by name, as well as other Department employees and contractors. HUD forwarded the complaints to the County's Board of Commissioners and, ultimately, initiated an audit of the Department.

Beginning in December 1995, HUD forwarded a series of draft audit findings to Wright in his capacity as Department Director. The draft findings identified a number of deficiencies in the Department's administration of HUD-funded programs. In addition to more general shortfalls, the draft findings concluded that Wright, among others, had engaged in a number of transactions with HUD contractors involving impermissible conflicts of interest. HUD forwarded its final draft finding on April 19, 1996.

On April 22, the Salary Board voted to suspend Wright, who is African-American, without pay.[1] On May 20, HUD issued its final audit report which, like the draft findings, was highly critical of Wright's management of the Department, and of his personal dealings with HUD contractors. On June 13, the Salary Board voted to terminate Wright's employment. Two other Department employees, both of whom were white, were also terminated. Wright ultimately responded to his termination byfiling a civil action against Montgomery County, the county commissioners as a group, and the three commissioners who served on the Salary Board -- Mario Mele, Richard S. Buckman, and Joseph M. Hoeffel, III -- in their individual capacities ("Appellants").[2]

_____

1. The Salary Board consisted of three County Commissioners and the County Controller.

2. Defendants Maillie Falconiero and Co. and George Falconiero are not County Commissioners and are not parties to this appeal.

3

Wright's complaint included a wide range of claims. In Count One, he alleged that the Appellants discriminated against, retaliated against, and harassed him on account of his race. He based this Count on 42 U.S.C. SS 1981, 1982, 1983, 1985(1-3), 1986, and 1988, but did not invoke Title VII. The remaining counts alleged a litany of state-law claims ranging from defamation to intentional and negligent infliction of emotional distress, as well as a variety of other tort claims.

In September 1998, the Appellants filed three separate motions for summary judgment based on: (1) claims of absolute and qualified immunity; (2) flaws in Wright's state-law claims; and (3) flaws in Wright's constitutional claims. In a December 22, 1998 Memorandum and Order, the District Court granted the unopposed motion to dismiss the state-law claims. See Wright v. Montgomery County, No. 96-CV-4597 (E.D. Pa. Dec. 22, 1998). In the same Memorandum and Order, the court erroneously characterized Count One of Wright's complaint as asserting claims under Title VII. See id., slip op. at 5-8. Finding that Wright had established a prima facie case of discrimination under Title VII, the court denied the Appellants' motion for summary judgment on Count One.

Because the District Court had characterized Count One, now the only surviving count, as asserting claims under Title VII, the Appellants filed a fourth motion for summary judgment on January 28, 1999. This time, the Appellants argued that summary judgment was proper because Wright had failed "to exhaust his legally mandated administrative remedies as a condition precedent of commencing suit." App. at 1364a. Thereafter, Wright informed the court that the federal claims asserted in Count One of his complaint were not based on Title VII, but rather on, inter alia, 42 U.S.C. S 1981. See A1389. The Appellants responded by filing yet another motion for summary judgment on February 16, asserting various grounds for summary judgment, and again asserting absolute immunity. See A1393-96 (motion); 1450-51 (Memorandum of Law). Subsequently, on February 19, the Appellants filed a motion to dismiss based on allegations that Wright was refusing to cooperate in discovery. See Fed. R. Civ. P. 37.

4

On March 15, the District Court filed a second Memorandum and Order. Therein, the court corrected itself, noting that Wright's claims in Count One were not based on Title VII, but rather, inter alia, 42 U.S.C. S 1981. See Wright v. Montgomery County, No. 96-CV-4597, 1999 WL 145205, at *1 (E.D. Pa. Mar. 15, 1999). In this second order, the court dismissed all claims asserted in Count One except Wright's retaliation claims. In the course of doing so, the District Court purported to address a number of motions, including the Appellants' January 28th motion for summary judgment based on exhaustion. The court did not address the January 28th motion's immunity claims, however, nor did it acknowledge the subsequent February 16th motion reasserting those claims.

On April 29, 1999, the District Court set the case for trial on May 10. Appellants filed their first notice of appeal on May 7. On that day, the District Court entered a number of orders disposing of the parties' remaining motions, including, apparently, Appellants' February 16th motion for summary judgment. Once more, however, the court did not address the Appellants' immunity claims. Instead, the court merely noted in a footnote that it had "already addressed the issues raised in this motion for summary judgment" in its March 15th Memorandum and Order. In response, Appellants filed an amended notice of appeal on May 11, indicating that they were also appealing from the May 7 Order.3

II. Standard of Review

Absolute immunity is a purely legal question over which we exercise plenary review. See Carver v. Foerster, 102 F.3d 96, 99 (3d Cir. 1996). Our review of the Appellants' qualified immunity claims is strictly limited to the legal questions involved. Therefore, our review of that issue is also plenary. See Abbott v. Latshaw, 164 F.3d 141, 145 (3d Cir. 1998), cert. denied, 119 S. Ct. 2393 (1999).

_____

3. In addition to this appeal, Appellants filed a Petition for Writ of Mandamus, asking us to order the District Court to address the immunity issue. Because we determine that the issues are properly before us, we will deny the Petition by separate order.

III. Discussion

The Appellants raise a number of issues in this appeal. As a threshold matter, we must first determine which of those issues, if any, we have jurisdiction to review. We conclude that we have jurisdiction to consider the Appellants' claims to absolute and qualified immunity, but lack jurisdiction to consider their remaining claims. We next consider whether the District Court erred by implicitly denying the Appellants' immunity claims. We hold that it did not.

A. Jurisdiction

1. Timeliness of Appeal

Wright contends that we lack jurisdiction to review the Appellants' claims because they failed to file notice of appeal within the 30-day limit established by Federal Rule of Appellate Procedure 4(a). See Fed. R. App. P. 4(a)(1). We disagree.

The Rule 4(a) deadline for civil cases applies to "all appealable orders, including collateral orders, specifically orders denying immunity." Weir v. Propst, 915 F.2d 283, 286 (7th Cir. 1990); see also Kenyatta v. Moore , 744 F.2d 1179, 1186-87 (5th Cir. 1984). In Weir, the court held that, "[i]f the deadline is missed, the order is not appealable. The defendant must then wait until another appealable order (normally, the final judgment) is entered, upon appeal of which he can challenge any interlocutory order that has not become moot." Weir, 915 F.2d at 286.

Wright argues that this appeal should be deemed as arising from, at the latest, the District Court's March 15th Order denying the Appellants' various motions for summary judgment. That argument overlooks one critical fact, however. The District Court did not explicitly rule on the Appellants' immunity claims in its March 15th Order, nor at any time before or after. In its December 22, 1998 Order, the court characterized Wright's federal claims as arising under Title VII. This, of course, temporarily took the immunity issues out of contention. Under Title VII, a public official may be held liable in her official capacity only,

6

making the doctrine of qualified immunity, which protects only against personal liability, inapplicable. See Harvey v. Blake, 913 F.2d 226, 227-28 (5th Cir. 1990) ("Because the doctrine of qualified immunity protects a public official from liability for money damages in her individual capacity only, the doctrine is inapplicable in the Title VII context."). When the District Court corrected itself in its March 15th Order, the original motion for summary judgment on immunity grounds was still properly before it.

The Appellants were entitled to believe that the District Court would eventually address their immunity claims at least until the court had denied all of their outstanding motions and set the case for trial. The District Court set the case for trial on April 29, and denied all of the Appellants' outstanding motions on May 7. The Appellants clearlyfiled their May 7th notice of appeal, as well as their May 11th amended notice of appeal, within 30 days of those dates, and thus within Rule 4(a)'s time limit. Accordingly, we reject Wright's argument that we must dismiss the Appellants' appeal as untimely.

2. Jurisdiction over an Interlocutory Appeal

Wright also raises an alternative challenge to our jurisdiction over this appeal. He argues that the Appellants' claims to qualified immunity do not fit within the collateral-order doctrine. We find his arguments on this point unpersuasive, however. Moreover, Wright ignores or overlooks the fact that the Appellants have also asserted a claim to, and appeal from the denial of, absolute immunity.

As a general rule, the federal appellate courts have no jurisdiction under 28 U.S.C. S 1291 to review interlocutory decisions such as a denial of summary judgment. Nevertheless, the collateral-order doctrine excepts a narrow range of interlocutory decisions from the general rule. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949). To fall within the doctrine, an interlocutory decision must conclusively determine the disputed issue, the issue must be completely separate from the merits of the action, and the decision must be effectively unreviewable on appeal from a final judgment. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978).

The Supreme Court has repeatedly applied the collateral-order doctrine to hold that orders denying absolute immunity are reviewable on interlocutory appeal. See, e.g., Nixon v. Fitzgerald, 457 U.S. 731, 102 S. Ct. 2690 (1982) (finding appellate jurisdiction over denial of president's claim to absolute immunity); Helstoski v. Meanor , 442 U.S. 500 (1979) (reviewing claim of immunity under Speech and Debate Clause); Abney v. United States, 431 U.S. 651 (1977) (reviewing claim of immunity under Double Jeopardy Clause); see also Carver v. Foerster, 102 F.3d 96, 98-99 (3d Cir. 1996). In doing so, the Court has explained that absolute immunity creates not only protection from liability, but also a right not to stand trial. See Mitchell v. Forsyth, 472 U.S. 511, 525 (1985). If required to await final judgment on the merits of the underlying action before seeking appellate review, the appellant would irretrievably lose the right not to stand trial in the first place. See id. Thus, interlocutory review of the Appellants' absolute immunity claims is necessary to preserve the protections such immunity affords.

In Mitchell, the Supreme Court extended the collateral-order doctrine to include denial of claims to qualified immunity. See id.; see also Brown v. United States, 851 F.2d 615, 619 (3d Cir. 1988). Nevertheless, denial of qualified immunity falls within the collateral-order doctrine only to the extent the denial turns on an issue of law. See Johnson v. Jones, 515 U.S. 304, 313 (1995); see also Grant v. City of Pittsburgh, 98 F.3d 116, 119-20 (3d Cir. 1996) ("To the extent they turn on an issue of law , decisions denying public officials qualified immunity are considered final under the collateral order doctrine.") (emphasis added). Generally, the relevant issue of law is whether the right the defendant is alleged to have violated was"clearly established" at the time the defendant acted or failed to act. See Behrens v. Pelletier, 516 U.S. 299, 313 (1996). Where, however, denial turns on the sufficiency of the evidence, it may not be appealed until the district court entersfinal judgment in the case. See Johnson, 515 U.S. at 313.

Wright argues that the Appellants' qualified immunity claims are not reviewable on interlocutory appeal because the District Court's December 18, 1998, Memorandum and

8

Order "sets forth the clearly established right which the Appellants violated and therefore denied them the protection of qualified immunity." Appellee's Br. at 13 (citing App. at 1779a). But this argument demonstrates a complete failure to understand the collateral-order doctrine, as well as the nature of our review. Had the District Court actually ruled that Wright had alleged a violation of a clearly established right, that would be exactly the type of ruling we would have jurisdiction to review on interlocutory appeal.

The fact is, however, the District Court never rendered any such ruling, nor addressed the Appellants' immunity claims in any manner. Indeed, although the court began its December 18th Memorandum and Order by stating that it was addressing, among other things, Appellants'"Motion for Summary Judgment Concerning Their Immunity," the court did not analyze the immunity issue, and instead limited its discussion to the viability of Wright's substantive claims. In its March 15th Memorandum and Order, the court again addressed the substantive issues only.

Because the District Court never explicitly addressed the Appellants' immunity claims, we must decide whether we have interlocutory jurisdiction to review an implied denial of those claims. We join the other Circuit Courts of Appeals that have addressed this issue and hold that we do. See Lowe v. Town of Fairland, 143 F.3d 1378, 1380 (10th Cir. 1998); Zayas-Green v. Casaine, 906 F.2d 18, 23 (1st Cir. 1990); Musso v. Hourigan, 836 F.2d 736, 741 (2d Cir. 1988); Craft v. Wipf, 810 F.2d 170, 173 (8th Cir. 1987); Helton v. Clements, 787 F.2d 1016, 1017 (5th Cir. 1986) (per curiam); see also Nelson v. Jashurek, 109 F.3d 142, 146-147 (3d Cir. 1997) (suggesting interlocutory jurisdiction might exist where denial of qualified immunity claim can be inferred); Ryan v. Burlington County, 860 F.2d 1199, 1203 (3d Cir. 1988) (holding that a district court's "order is `final' and immediately reviewable under Mitchell if [the appellants] properly raised a claim of qualified immunity in the District Court."). Allowing this case to proceed to trial without considering the Appellants' immunity claims would irreversibly deprive them of any right to avoid trial.

9

Of course, the fact that we have jurisdiction to review the Appellants' immunity claims does not automatically mean that we should also decide them. Some courts confronted with this situation have simply remanded the case for the district court to rule on the claims in the first instance. See, e.g., Musso, 836 F.2d at 742; Craft v. Wipf, 810 F.2d at 173; Helton v. Clements, 787 F.2d at 1017. Without establishing a fixed rule, we conclude that remand on the immunity claims would not be appropriate given the particular circumstances of this case.

The Supreme Court's decisions in this area make it clear that an immune official's right to avoid trial is based not on the individual's desire to avoid the personal costs and aggravations of presenting a defense. Rather, the right not to stand trial is based on far broader concerns for avoiding the social costs of the underlying litigation, and for ensuring and preserving the effectiveness of government. See Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982). The concern is that, absent immunity from suit as well as liability, the attention of public officials will be diverted from important public issues. Additionally, qualified individuals might avoid public service altogether, while the threat of litigation may undermine the willingness of those who do serve to act when action is necessary. See id. at 814.

The Appellants in this case have already been distracted for nearly four years by the need to defend themselves in this action. They have presented the District Court with numerous motions, including multiple assertions of their claims to immunity from suit. They have received and responded to the District Court's disposition of those motions, energetically pursued an appeal in this court, and awaited our decision. Where, as here, the issues are purely legal and ripe for review, we see little benefit in requiring these Appellants to press their claims anew in the District Court, and to risk yet further delay should that court's ultimate decision lead to a subsequent appeal.

3. Jurisdiction Over Remaining Issues

In addition to their claims of absolute and qualified immunity, the Appellants ask us to dismiss Wright's race-

based retaliation claims, asserted under S 1981, on three alternative grounds. First, they argue that Wright'sS 1981 claim must be dismissed because he has admitted that three of the four Salary Board members who voted to terminate him did not act with improper motive. See Appellants' Br. at 42-45. To hold the County or the Commissioners liable, they contend, Wright must prove that a majority of the Salary Board members "voted to terminate Plaintiff for the improper purpose of retaliating against him for protesting mistreatment because he is black." Id. at 42 (internal quotation marks and citations omitted).

Appellants next argue that we must dismiss Wright's S 1981 claim because he cannot establish a prima facie case of retaliation under that statute. See id. at 45. More specifically, they argue that Wright cannot, as a matter of law, demonstrate that the activity for which the Appellants allegedly retaliated was a "protected" activity. See id. at 46. They similarly argue that Wright cannot establish a causal link between the activity in question and his subsequent termination. See id. at 48. Finally, the Appellants argue that even if Wright could establish a prima facie case of retaliation, they have presented "multiple legitimate, non-discriminatory reasons for [his] termination." Id.

We express no opinion on the merits of these arguments. Unlike absolute and qualified immunity, Appellants' remaining claims do not fall within the collateral-order doctrine. Indeed, they do not satisfy any of the doctrine's three requirements. See Transtech Indus., Inc., v. A&Z Septic Clean, 5 F.3d 51, 55 (3d Cir. 1993) (citing Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978)). The District Court's denial of their motion for summary judgment has not conclusively resolved the issues the Appellants raise on appeal. Those issues are not completely separable from the merits of the action. And, finally, they will not effectively be unreviewable on appeal from a final judgment. Consequently, the collateral-order doctrine confers no jurisdiction to consider Appellants' non-immunity based claims on interlocutory appeal.

The Appellants suggest that we have discretion to consider their additional claims under pendent appellate

11

jurisdiction. In fact, we have previously recognized a discretionary, though "narrow," doctrine of pendent appellate jurisdiction. See United States v. Spears, 859 F.2d 284, 287 (3d Cir. 1988) (citation omitted). But we have also concluded that the doctrine should be used "sparingly," and only where there is a sufficient overlap in the facts relevant to both the appealable and nonappealable issues to warrant plenary review. See id. We have also stated that " `pendent appellate jurisdiction over an otherwise unappealable order is available only to the extent necessary to ensure meaningful review of an appealable order.' " National Union Fire Ins. v. City Sav., F.S.B., 28 F.3d 376, 382 (3d Cir. 1994) (quoting Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 209 (3d Cir. 1990)); see also Swint v. Chambers County Comm'n, 514 U.S. 35 44-50 (1995) (cautioning against an expansive application of pendent appellate jurisdiction, and overturning the Eleventh Circuit's decision to review a county commission's summary judgment motion as pendent to its review of the qualified immunity claims asserted by individual defendants).

In this case, the Appellants' non-immunity claims depend on questions of fact that the District Court has yet to resolve. Consequently, plenary review of those claims would be inappropriate. Additionally, the Appellants' immunity claims are entirely susceptible to meaningful review without any consideration of their non-immunity claims. Accordingly, we decline to exercise pendent appellate jurisdiction over the non-immunity claims.

B. The Immunity Claims

1. Absolute Immunity

The Appellants claim that they are entitled to absolute immunity from suit. Their decision to terminate Wright, they argue, is "precisely" the type of policy-making decision the Supreme Court has held to be " `in the sphere of legitimate legislative activity' and entitled to absolute immunity." Appellants' Br. at 29 (quoting Bogan v. Scott-Harris, 523 U.S. 44, 54-55 (1998)). We disagree.

12

It is true that local legislators, like federal and state legislators, are absolutely immune from liability for their legislative activities. See Bogan, 523 U.S. at 49; see also Aitchison v. Raffiani, 708 F.2d 96 (3d Cir. 1983). To be legislative, however, the act in question must be both substantively and procedurally legislative in nature. See Carver v. Foerster, 102 F.3d 96, 100 (3d Cir. 1996). An act is substantively legislative if it involves "policy-making of a general purpose" or "line-drawing." Id. It is procedurally legislative if it is undertaken "by means of established legislative procedures." Id.

The Appellants' decision to terminate Wright fails the substantively-legislative test. The decision did not involve a matter of general policy, applicable to a variety of circumstances, nor to a range of County employees. Quite to the contrary, the decision targeted a particular employee suspected of specific acts of mis- and malfeasance. Urging the opposite conclusion, the Appellants argue that their decision to terminate Wright is analogous to the decision held to be legislative in Bogan. Even a passing review of the Supreme Court's decision in that case belies the argument, however.

In Bogan, the act at issue involved the elimination of the plaintiff 's position as part of a larger, city-wide downsizing prompted by declining financial resources. See Bogan, 523 U.S. at 46; see also Aitchison, 708 F.2d at 97 (holding that borough council members who voted to abolish assistant building inspector position on efficiency and economy grounds had absolute immunity from S 1983 claims brought by employee who held the position). This case, in contrast, involves a decision to eliminate a particular employee rather than the position that employee happens to hold. Indeed, as the Court expressly noted in Bogan, the act at issue in that case

> reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents. Moreover, it involved the termination of a position, which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office.

13

Brogan, 523 U.S. at 55-56 (emphasis added).

In short, we need not consider whether the act offiring Wright by vote of the Salary Board was procedurally legislative. Regardless of the procedure, the act was not legislative in substance. Firing a particular employee is a personnel decision that does not involve general policy making. Appellants' firing of Wright did not reach beyond "the particular occupant of the office." Nor was their action an "integral step[ ] in the legislative process." Id. Actions of an executive or administrative nature such as this are not entitled to absolute immunity. See Carver, 102 F.3d at 100. As a result, Appellants' reliance on Bogan is misplaced and their claim of absolute immunity must be denied.

2. Qualified Immunity

Appellants claim that in addition to absolute immunity, they are also entitled to qualified immunity. As they correctly note, the doctrine of qualified immunity shields government officials from personal liability to the extent the conduct at issue "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See Appellants' Br. at 37 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Unfortunately, the Appellants' attempt to establish that their decision to terminate Wright did not violate a clearly established right wholly misunderstands the limited nature of our interlocutory review.

The Appellants contend that their decision to terminate Wright was based on HUD's audit report, which suggested, at best, that he was a poor manager, and, at worst, that he was guilty of potentially criminal conflicts of interest. They further contend that their reliance on the report, whether or not mistaken, was not unreasonable under the circumstances. They conclude, therefore, that because Wright "cannot demonstrate that the individual Defendants were `plainly incompetent' or `knowingly violating the law' when they terminated him, [his] claims . . . must be dismissed on grounds of qualified immunity." Appellants' Br. at 42. As we have already suggested, the argument is misplaced.

14

Wright has not alleged that the Appellants' reliance on the audit report was unreasonable. Quite to the contrary, he alleges that the Appellants' claimed reliance on the report is merely a pretext. The Appellants terminated him, Wright alleges, in retaliation for speaking out against the County's allegedly racially discriminatory employment practices. There is no question that such racially-based retaliation would violate a right that was clearly established at the time Wright was terminated.[4] See, e.g., Liotta v. National Forge Co., 629 F.2d 903, 907 (3d Cir. 1980) (holding that appellant had submitted sufficient evidence of race-based retaliation to survive summary judgment on his S 1981 claim), cert. denied, 451 U.S. 970 (1981); Patrick v. Miller, 953 F.2d 1240, 1249-50 (10th Cir. 1992) (holding that six cited cases "were sufficient to inform a reasonable government official in 1988" that racially based retaliatory actions "may violate the employee's rights as enumerated in S 1981.").

Whether the Appellants' decision to terminate Wright was made in response to HUD's audit findings as they claim, or in retaliation as Wright alleges, is a question of fact to be decided in the District Court. Our review on interlocutory appeal is strictly limited to determining whether the right alleged to have been violated was clearly established at the time of the act in question. Until the District Court has entered a final judgment, we do not consider whether the plaintiff has produced sufficient evidence to prove his allegations. Holding as we do that Wright has alleged the violation of a clearly established right, we must also hold that the Appellants are not entitled to qualified immunity at this stage of the proceedings.

IV. Conclusion

For the reasons stated, we will affirm the District Court's implicit denial of Appellants' immunity claims. We decline

_____

4. Appellants cite Swineford v. Snyder County Pa., 15 F.3d 1258, 1271 (3d Cir. 1994), for the proposition that "speech intended to air personal grievances" is not protected by the First Amendment. That, of course, is inapposite to the question of whether retaliation for such speech violates 42 U.S.C. S 1981.

to address the Appellants remaining claims, and will remand the case for further proceedings.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit